## M. R. EBY, ET AL v. R. ELDER, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued May 29, 1888—Decided October 1, 1888.

1. If, when land is conveyed, it is openly and plainly subject to an easement of way, the existence of the easement will not be a defence to the payment of the purchase money, as a breach of the covenant against incumbrances implied from the words, grant, bargain and sell.

2. When there was evidence that the passage over the land was not by any defined route, and also of admissions by the grantor that before the deed was delivered the grantee was assured that no right of way existed, the question whether the physical condition of the ground was plainly affected by the use of the way was properly submitted to the jury.

3. The defendant in a scire facias upon a purchase money mortgage is not estopped from setting up a breach of the implied covenant against incumbrances in the existence of an easement upon the land, because by a verdict and judgment in his favor, under a plea of failure of consideration in a former action, recovery upon a bond for another part of the purchase money was defeated.

4. Under the plea of failure of consideration, as distinguished from the plea of set-off, the defence is equitable, inherent in all the securities founded on the same consideration, and applicable to successive actions upon any of them till the defendant is compensated to the extent of his loss: Good v. Good, 9 W. 567, and 3 W. & S. 475, followed; Kane v. Fisher, 2 W. 246; Simes v. Zane, 24 Pa. 242, distinguished.

5. Where a purchase money mortgage secured separate bonds payable to each of several grantors, the right of the grantee to defend a suit upon the mortgage by one bondholder for failure of consideration, is not defeated by a compromise settlement previously made by the defendant with the holders of the other bonds.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY J, absent.

No. 8 May Term 1888, Sup. Ct.; court below, No. 287 March Term 1887, C. P.

On March 8, 1887, service was accepted of a scire facias sur mortgage wherein Maurice R. Eby, administrator of J. R. Eby, deceased, W. J. and T. G. Calder, executors of William Calder, deceased, Simon Cameron and J. D. Cameron, were plaintiffs, and Rebecca Elder, executrix of James Elder, deceased, Scott Elder, W. K. Cowden and W. S. Rutherford, were defendants. The defendants pleaded non est factum, payment with leave, lefalcation and want of consideration.

The cause was tried on October 4, 1887, when the plaintiff gave in evidence that on May 21, 1871, Simon Cameron, J. D. Cameron, William Calder and J. R. Eby, by a deed containing the usual covenants conveyed to James Elder, Scott Elder, W. K. Cowden and W. S. Rutherford, a lot in Harrisburg fronting 325 feet on Market street, and extending back 150 feet, for the consideration of $21,000. Of the purchase money, $7,000 was paid in cash and for the balance twenty-eight joint and several bonds in $500 each were executed and delivered by the grantees secured by a joint mortgage of the same date in the penal sum of $28,000. Each of the four vendors received seven of these bonds made payable to him as his share of the unpaid purchase money secured by the mortgage. Afterwards the title to the mortgaged property became vested in W. K. Cowden. The plaintiffs then rested.

The defendants produced twenty-five of the bonds, when it appeared that all the bonds secured by the mortgage had been paid, except three held by J. R. Eby. It was then shown by the record of a suit to No. 170 January Term 1878, J. R. Eby, for use of Christian Long, against W. K. Cowden, that on October 4, 1880, in an action of debt upon one of these three bonds, a verdict and judgment had been had by the defendant, upon the ground that after the execution and delivery of the bonds and mortgage the grantees of the land had been compelled by proceedings at law to yield to the assertion of an easement of way over the property under a grant made by the plaintiffs in 1859, the damages to the grantees therefrom being in excess of the amount due upon the bond sued on. This record also showed that during the trial of the case, the pleas

of defalcation or set-off, and payment with leave, were with-drawn, and the plea of failure of consideration substituted. The defendants in the present case then gave in evidence the grant of a right of way over the lot from the grantors in the deed (the grantees in the mortgage), executed and acknowl-edged December 13, 1859, and duly recorded; also the records of certain actions of trespass against the grantees in the deed (the grantors in the mortgage), brought in 1872 and result-ing in judgments against the defendants therein, establish-ing the right of way over the premises twenty feet wide opening on Market street. They then offered evidence of the injury to the lot caused by the existence of the private way, when the plaintiffs objected, and interposed evidence to sustain the objection, that the verdict and judgment in Eby for use of Long against Cowden, No. 170 January Term 1878, was a bar to the offer made as a defence in this case. The objection was overruled. The defendants then adduced evidence of damage to the property from the existence of the easement, and rested.

In their rebuttal case, the plaintiffs introduced evidence to show that the private road referred to had been open and visi-ble upon the premises and used by those interested in it from 1859. They called Lerue Metzgar, who testified that in 1870 or 1871, he had to do with the negotiations between the plaint-iffs and defendants for the purchase of the lot; that a contract was prepared, but unexecuted because the proposed purchasers had learned of the existence of the right of way; and, that an adjustment was reached by a deduction of $1,000 or $1,500 made from the purchase money as first fixed upon, when the conveyance, the mortgage and bonds, were delivered for a con-sideration less the deduction made. Witnesses had testified for the defendants that the existence of the easement was not an injury to the property. It was then shown by the plaintiffs that after the verdict and judgment, in the action of Eby for use of Long against Cowden, No. 170 January Term 1878, there being then $6,000 of the bonds outstanding, Mr. Cowden, owning the lot bound by the mortgage securing them, made a proposition, as follows:

I propose as a compromise of the litigation arising out of the above mortgage and the bonds secured thereby to pay the

face of the above six thousand dollars of bonds. This I propose as a compromise and end of litigation. If not accepted by the holders of the bonds and mortgage, then this paper is to be returned to me and not to be used, nor is the proposition to compromise to be used in any suit or suits arising out of or founded on the said bond or mortgage. June 28, 1882.

This proposition was accepted by all the bondholders save Mr. Eby, and those accepting were paid and surrendered their bonds.

In sur-rebuttal of the testimony of Mr. Metzgar, Mr. Wallace Dewitt was called by the defendants and testified that in 1872, as counsel for James Elder and W. K. Cowden, defending the suits in trespass for obstructing the private way, he went with his clients to Mr. Calder and Mr. Eby, and called their attention to depositions which had been taken November 11, 1871, in a street view in the Quarter Sessions, wherein both J. R. Eby and James Elder had testified: "They read their evidence in that paper and said: 'we will adhere to what we have sworn to before those viewers; that there was no road there, and that we assured them there was no road there,' and upon that I went before the court."

The court, McPHERSON, J., charged the jury, and answered the points presented as follows:

In 1859, the gentlemen who owned this property made an agreement with the Reading Railroad Company, as a result of which a road was laid out across the lot which Mr. Cowden and his partners afterwards bought. It was laid out in favor of the land lying to the westward, and imposed upon the Cowden lot what is known as a servitude,—that is the legal name of it—a burden put upon this lot in favor of the others. It is in evidence, and it is not seriously denied, that from that time, or shortly afterwards, at least,—the date is a matter the jury must determine,—the road was in actual use upon the ground, and that from that time on it has been continuously in use by the persons occupying these other lots to the westward,—perhaps by others, but certainly by them. This agreement also was put upon the records of the court.

About 1871 Mr. Cowden and the other gentlemen named as defendants here made a proposition for the purchase of this

property, but while that was in process, it is said, that a certain agreement was made, and this raises a question which I will submit to you. Mr. Metzgar has testified that during the pendency of the negotiations between Mr. Cowden and his associates and the gentlemen who owned the property, the existence of this road was talked about, and that Cowden and his associates refused to take it at the price which had been suggested, insisting that some deduction must be made. Mr. Metzgar then goes on to say that an allowance of $1,000 or $1,500 was made for this road, and thereupon a deed was made, and mortgage, etc., executed. Upon that there is some testimony. There are among other things, certain declarations said to have been made by Mr. Eby, admitting that before the deed was executed Mr. Cowden and his associates had been assured that there was no road. This, of course, is in contradiction with the view as asserted by Mr. Metzgar, and if there be any other testimony bearing on that point, the jury must consider it. You must determine how that fact is, and we say to you that if upon the evidence you find that an allowance was made for this road, and that $1,000 or $1,500 was thrown off for the injury which it did to the property, then the defendant cannot set up again that defence in this suit, and the plaintiff is entitled to recover one thousand dollars, with interest from the date from which it begins to run. In other words, if the story told by Mr. Metzgar is true, the plaintiff is entitled to recover the amount of the two bonds. If you find it is not true, then you come to the question, what was the condition of the ground at the time of the deed; what was the condition of this road at the time this deed was made?

. There is testimony that in 1871 this road was plainly marked upon the ground as a road in actual use. That would of course put anybody desiring to purchase the property upon notice that there was such a road there; that probably there was that incumbrance there, and then, if a deed was made without any reference to the road, without any express agreement against it or any promise to be responsible for the damage it might cause, there would be no remedy. That is, no remedy under the implied contract arising from the words, grant, bargain and sell. In other words, if you find from all the evidence that that road was plainly marked upon the ground, showing

it to be a burden upon this property, an easement upon the ground, the plaintiff is entitled to recover.

If, however, that was not so, then you come to the other question in the case, and that other question is simply the question of how much. For if the property was taken without the notice I have spoken of, then there is a covenant in the deed against any such incumbrance as a road would be. It was broken, and then the question would be how much should be paid by the grantors, the people who made the deed; and, of course, the answer to that is found when you answer the question, how much actual damage was done. That will be the first question, when you come to the question of damages, to be determined, and that will be answered by answering this question: What was the value of the property without the road, and what was the value of the property with the road on it; and the difference between these two sums would represent the injury, and that you must estimate as of the time when the road was taken, when the right to have the road was enforced and the defendants were compelled to give up that much of the property for the use of the road; and, since the evidence is uncontradicted as to the use from that time down to the present, we say they should also be allowed interest upon that sum from that time to the present.

However, the whole amount of that damage would not be available to the defendant as against Mr. Eby, and the reasons for that are these: in the first place, on January 28, 1882, a paper was made which has been given in evidence, and which now lies before me. It took the form of a proposition from Mr. Cowden, and the uncontradicted evidence in the case is that it was accepted by three of the gentlemen named in this mortgage, viz.: Mr. J. D. Cameron and Mr. Zimmerman, who held the legal title to the bonds which Mr. Cameron and Mr. Calder owned. As I said, the proposition was accepted by these three interests and carried out. Therefore we say, that this paper was a settlement of the difference then existing with reference to this road, between Mr. Cowden and these three interests. It says, " I propose as a compromise " to do certain things, and that proposition was accepted. Now there is not a particle of evidence in the case to show that there was any other litigation except that arising out of the construction of

this road, and we say to you that this compromise was a settlement of the difficulty arising out of this road.

I do not want to be understood as saying that there could be an apportionment of these bonds under a defence of this kind. The parties themselves apportioned, and it is not we who are now doing it, but simply declaring, in the interpretation of this agreement, what they themselves actually did. This did not affect Mr. Eby, because he did not agree to it. His name does not appear and he is not bound by it; neither can he set it up in his own behalf. Therefore, as I understand the matter, if any damages could be set up by Mr. Cowden, the one fourth part of it would be available to him as against the bonds now in suit. That is, it would be available if it is more than the amount which he has already had the benefit of. You recollect that a suit was brought by Christian Long who was an assignee of another of these bonds, and in that suit this same defence was set up. That was a bond of Mr. Eby. The bonds were drawn in a peculiar way, and instead of being made to all the grantors, they were made to the grantors separately. Mr. Simon Cameron got so many, Mr. Calder got so many, and the rest all having the same amount. In the trial upon this bond of Christian Long, this defence was set up, and there was a verdict for the defendant; that is, he got the benefit or just as much as was due upon that bond. That is a simple calculation, and amounted to some seven hundred dollars. Therefore, if the one fourth part does not exceed the sum of seven hundred odd dollars, there is nothing to be set up in this suit, and the defendant would be entitled to recover one thousand dollars, with interest from that date. If the one fourth part is greater than the sum of this seven hundred odd dollars, the excess can be set up against the claim here, and if that be as much as the whole claim of the plaintiff, then the verdict goes for the defendant.

The plaintiffs submit the following points, (inter alia) :

1. In the absence of deceit, imposition or fraud, a slight deficiency in the quantity of land purchased is no defence to an action for the purchase money upon an obligation given in consummation of the contract of purchase, and the verdict should be for the plaintiff.

Answer: That is refused for two reasons : First, because it

does not apply, and second, it asks us to give a binding instruction for the plaintiff.[1]

4. The defendant, Cowden, having on the trial of a former suit on one of the notes now held by Eby's administrator, (viz.: in action of Jacob Eby, use of Christian Long v. Wm. K. Cowden Co., obligors, etc., entered to No. 170 of January Term, 1878,) under the plea of want of consideration, defeated a recovery by evidence showing damage by reason of the existence of a road upon and over the premises included in the mortgage, is estopped from setting up the same defence to this action, and the verdict should be for the plaintiff for the amount of his other two notes, with interest thereon from May 1, 1871.

Answer : This is refused.[2]

5. The agreement dated December 30, 1859, and recorded the next day between the Philadelphia & Reading R. R. Co., of the one part, and Jacob R. Eby, William Calder and Simon Cameron of the other part, having located the road complained of upon the locus in quo, and said road at the time of the purchase by said Cowden and others being open and in actual use as a manifest easement upon the premises, the defendant Cowden and his co-purchasers took the property subject to said easement, and are not entitled in law to any deduction for the purchase money by reason thereof.

Answer : If the jury find from the evidence that at the time of the purchase the land was openly and plainly subject to this easement; that the physical condition of the ground was openly and plainly affected thereby, then, since there is no express agreement or covenant relating thereto, the continuance of the easement would not be a breach of the covenant against incumbrances, and the plaintiff would be entitled to recover $1,000, with interest thereon.[4]

6. The defence in this case, being founded upon the covenants contained in the deed in evidence from Cameron and others to Elder and others, and said covenants being in all respects joint and not several, the compromise in evidence with the two Camerons and Calder, three of the joint covenantors, is a complete bar to the defence set up by the defendants in this controversy.

Answer : Refused.[6]

7. Under the law and the evidence in the case the verdict should be for the plaintiffs.

Answer: Refused.[7]

The defendants submit the following points [inter alia] :

1. The paper given in evidence, the contracting parties to which are the grantors in the deed to Elder, Cowden & Co., and the Philadelphia & Reading Railroad Company, being executed on full consideration for the benefit of Messrs. Simons, Wiestling and Weirman, and so expressed in the paper itself; and the said beneficiaries having taken possession of the road purchased for them under it, in lieu of the one which they surrendered to said railroad company, and having used it continually down to the sale of the land to Elder, Cowden & Co., have a complete title to said easement, and it therefore constitutes an incumbrance covered by the words, grant, bargain and sell, in the deed to Elder, Cowden & Co.

Answer: The road in evidence is an incumbrance covered by the words, grant, bargain and sell, in the deed referred to.[5]

3. Under the law as settled by the Supreme Court in Good v. Good, 9 W. 567 and 3 W. & S. 475, there can be no pro rata distribution of defalcation for failure of consideration among the different bonds secured by the mortgage, but the failure of consideration is inherent in all, and applicable to successive actions on any of them, or on the mortgage itself, until the defendant is compensated by defalcation to the extent of his loss.

Answer: This is affirmed if this defence is available at all. I mean by that, of course, if you reach that branch of the case.[3]

7. If the jury believe that in November, 1871, after the delivery of the deed by Eby and others to Cowden and others, Messrs. Calder and Eby declared and testified in the road case given in evidence in the presence of James Elder, that no road existed and that these declarations under oath were made, as James Elder testifies in that case, at the time of and before the delivery of the said deed, then Mr. Eby's representative is estopped from setting up said road and from showing such facts as would put Cowden and others upon notice of said road.

Answer: This is refused. I do not want the jury to understand that they are not to consider Mr. Eby's statements. They are, of course, to be considered.[8]

The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this writ assigning as error:

Arguments.

1. The answer to plaintiffs' 1st point.[1]
2. The answer to plaintiffs' 4th point.[2]
3. The answer to defendants' 3d point.[3]
4. The answer to plaintiffs' 5th point.[4]
5. The answer to defendants' 1st point.[5]
6. The answer to plaintiffs' 6th point.[6]
7. The answer to plaintiffs' 7th point.[7]
8. The answer to defendants' 7th point.[8]

*Mr. Robert Snodgrass* and *Mr. Francis Jordan*, for the plaintiffs in error:

1. " The acceptance of a deed and the delivery of a bond for the purchase money, preclude the purchaser from claiming an allowance for a deficiency in the land, in a suit brought upon the bond, where there has been no actual bad faith or fraud on the part of the purchaser: " Rodgers v. Olshoffsky, 110 Pa. 147. In the present case there was at most a loss of about one twentieth of the land, and no pretence of fraud or bad faith.

2. The second and third assignments of error raise the same question. It was both admitted and proved that the defendant in the suit of Eby for use of Long had defeated a recovery by setting up the existence of the same easement. If an action of covenant be brought upon an article of agreement for the sale of land, to recover a part of the purchase money due when suit is brought, and defendant sets up as a defence defect of title because of incumbrances, he cannot set up the same matter of defence in a subsequent action for the residue of the purchase money: Kane v. Fisher, 2 W. 246. When the fact is found that the matter in dispute in the pending action is the same that was litigated in the former one, the court must decide upon the effect of the former judgment: Rockwell v. Langley, 19 Pa. 502; 1 Herman on Estoppel, §§ 107–9; Simes v. Zane, 24 Pa. 244. Moreover, the easement complained of was either within the covenant in the deed, or it was not. If within it, the remedy could only be had upon it. But the easement being known, open and manifest, was not within the covenant, as shown by Wilson v. Cochran, 46 Pa. 229, and Memmert v. McKeen, 112 Pa. 315.

3. The fourth and fifth specifications relate to the condition

of the road in question as an open, notorious and visible easement upon the premises. There was not a particle of evidence from any source to suggest an inference even, that this road had not existed on the premises openly and notoriously from 1859 down. Was it not then the duty of the court to give binding instructions to find that at the time of the purchase the land was openly and plainly subject to the easement in question, and not to leave it to the jury to find as a matter of fact? Facts established with no opposing or contradictory evidence cannot be spoken of by the court or considered by the jury as disputed or controverted facts: Maynard v. Lumberman's N. Bank, 20 W. N. 272 (9 Cent. R. 766); R. & C. R. Co. v. Ritchie, 102 Pa. 431; First N. Bank v. Wirebach, 106 Pa. 47; Rodgers v. Olshoffsky, 110 Pa. 151; Memmert v. McKeen, 112 Pa. 315.

4. The eighth assignment is germain to the fourth and fifth. Whatever declarations or admissions were made by Mr. Eby were made in 1872 long after the deed was delivered. The defendants' seventh point was based entirely upon these declarations or admissions. The qualification of the answer, permitting the consideration of the admissions, destroyed the effect of the refusal of the point, and left the jury to be influenced by evidence which had been rejected.

5. It is substantially conceded, and the court below proceeded upon the theory, that the compromise paper of January 28, 1882, operated as a complete release of three of the joint covenantors. If that be so, then must it be conceded that its effect was to discharge all, unless it is a compromise or composition within the meaning of the act of March 22, 1862, P. L. 167. The act primarily relates to partnerships; joint debtors are included only by the terms of the fifth section. The nature of the covenant precludes the construction that joint covenantors in this deed are within the provisions of the act. Moreover, in all questions of statutory construction, words "are to be taken in their natural, plain, obvious and ordinary signification:" P. & E. R. Co. v. Railroad Co., 53 Pa. 60.

*Mr. H. M. Graydon* (with him *Mr. David Mumma*), for the defendants in error:

1. The first assignment is not pressed, and the court below was clearly right in the answer to the point submitted.

2. That such an easement as that created in this case in 1859 is an incumbrance and a breach of the covenant against incumbrances, is decided in Wilson v. Cochran, 46 Pa. 233. The damage resulting therefrom proven in the former suit of Eby, for use of Long, where the plea of set off or defalcation was withdrawn and the plea of failure of consideration substituted, defeated that action on the bond in suit, and left the excess of the damage over the amount recoverable on that bond to be applied to any demand for the payment of the bonds for the balance of the purchase money: Good v. Good, 9 W. 567 and s. c. 3 W. & S. 475. Good v. Good is cited approvingly in Rice v. Olin, 79 Pa. 391, showing that it is of recognized authority.

3. There was testimony that no certain and defined way was used by those passing over the premises mortgaged. But the plaintiffs introduced witnesses to prove an open, notorious roadway used continuously from 1859 to 1871, and that therefore the defendants knew of the incumbrance when they purchased. Under the testimony the defendants could not say otherwise than that the plaintiffs broke the covenants of their deed, but it by no means followed that the defendants purchased with a knowledge of the incumbrance ; this was a question for the jury, and the instructions were favorable to the plaintiffs. Moreover, it was in evidence that at least two of the grantors, one of whom was the plaintiff, believed and asserted that the road had no existence. It existed, it is true, on paper, but its actual existence was denied by those who were presumed to know all about it.

4. How the compromise with the others, holding bonds severally payable to them, operated as a release of our right under Good v. Good, 9 W. 567, 3 W. & S. 475, when Mr. Eby refused to join in it and sued on the mortgage, it is difficult to see. But even if the reverse process were adopted and we were made to take the position of a creditor settling with joint debtors, yet, except in the case of a technical release, the doctrine relied upon has long since been modified. A release of one of several joint debtors, on payment of his portion of the debt, does not discharge the others if that was not the intention of the parties: Burke v. Noble, 48 Pa. 168. In Pierce v. Sweet, 33 Pa. 151, a release given to a joint trespasser was held

not to bar action against the others: See also, Greenwald v. Kaster, 86 Pa. 46.

5. It is true Mr. Eby's admissions were made after the delivery of the deed, but they relate to statements which he says were made before the purchase. What the court ruled in the answer to our seventh point was, that the facts stated in the point did not constitute an estoppel, but that the jury still had the right to consider the admissions in their bearing upon defendants' knowledge of the incumbrance when they purchased. The qualification was clearly right.

OPINION, MR. JUSTICE STERRETT:

In this action of scire facias sur purchase money mortgage, brought to recover the balance, $1,000 and interest due thereon, the defence was failure of consideration resulting from an easement or right of way over the mortgaged premises, previously granted by the mortgagees, but unknown to the mortgagors, as they allege, at the time the lot was conveyed to them in May, 1871. The consideration of the conveyance was $21,000, one third in hand, and the residue, $14,000, evidenced by twenty-eight bonds of $500 each, secured by the mortgage in suit. Seven of the bonds were made payable to each of the four vendors individually, as his share of the deferred purchase money.

Shortly after their purchase the mortgagors closed the road, and, in the suit brought against them by claimants of the easement, the right of the latter to the use thereof was established and has since been enjoyed without question. In the meantime the mortgage debt was reduced to $6,000, represented by three $500 bonds to each of the four mortgagees. Further payments having been refused, suit was brought on one of the bonds in the name of the payee, Jacob R. Eby, against Wm. K. Cowden, one of the obligors, who by conveyance from his three co-tenants had become sole owner of the mortgaged premises. The pleadings were so amended before verdict that the sole defence was failure of consideration, resulting from the easement above mentioned. The result was a verdict for defendant and judgment thereon. Matters then remained in statu quo until January, 1882, when Cowden, then sole owner of the lot, proposed to the several bondholders to settle their dispute as to failure

of consideration, etc., by paying the face of the eleven out-standing bonds, without interest. This proposition was accept-ed by three of the bondholders, and thus nine of the bonds were paid; but the holder of the two remaining bonds, both payable to Jacob R. Eby, declined to accept the proposition of compromise. In the meantime Mr. Eby died, and these bonds, which had been assigned by him, were re-assigned to his admin-istrator, and this suit was brought to recover the $1,000 (two bonds of $500 each), residue of purchase money and interest. On the trial, the defence and evidence in support thereof were substantially the same as in the suit on the $500 bond above mentioned, and the result was also the same, viz.: a general verdict in favor of defendants, mortgagors, and judgment thereon.

In resisting the defence set up by the mortgagors, plaintiffs introduced evidence tending to prove that at the time of the sale, and prior thereto, the roadway across the lot was visibly open and in actual use, and requested the court to charge that Cowden and his co-purchasers took the property subject to the easement, and were not entitled to any deduction from the purchase money. This point was substantially affirmed, the learned judge saying: "If the jury find from the evidence that at the time of the purchase the land was openly and plainly subject to this easement; that the physical condition of the ground was openly and plainly affected thereby, then, since there is no express agreement or covenant relating thereto, the continuance of the easement would not be a breach of the covenant against incumbrances, and plaintiffs would be entitled to recover $1,000 and interest thereon." In the general charge he also said: "There is testimony that in 1871 this road was plainly marked upon the ground as a road in actual use. That would, of course, put anybody desiring to purchase the prop-erty upon notice that there was such a road there; that proba-bly there was that incumbrance there, and then, if the deed was made without any reference to the road, without any express agreement against it, or any promise to be responsible for the damage it might cause, there would be no remedy; that is, no remedy under the implied contract arising from the words, 'grant, bargain, and sell.' In other words, if you find from all the evidence that the road was plainly marked upon the ground,

showing it to be a burden on this property, an easement upon the ground, the plaintiff is entitled to recover. If, however, you find it was not so, then you come to the other question in the case," viz.: the question of damages or compensation for failure of consideration, etc. The attention of the jury had previously been called to the declarations of Mr. Eby, "admitting that before the deed was executed, Mr. Cowden and his associates had been assured that there was no road," and other evidence bearing on the question. That controlling question of fact raised by the evidence, and submitted to the jury, was decided adversely to plaintiffs.

They also undertook to prove that at the time the deed was executed, an allowance was made for the easement, and "that $1,000 or $1,500 was thrown off" for the injury which it did to the property. That question was submitted to the jury, and, as requested by plaintiffs, they were instructed that if such was found to be the fact, defendants were not entitled to any deduction for the easement in question; but that, as well as all other material questions of fact raised by the pleadings and evidence, was found in favor of defendants; and the jury proceeded to determine the extent of the depreciation or failure of consideration resulting from the existence of the easement.

Plaintiffs' point, recited in the first specification of error, was rightly refused for the reasons stated by the learned judge in his answer thereto.

The second and third specifications, relating to the right of defendants to show failure of consideration as an equitable defence to the balance due on the mortgage, notwithstanding they had previously availed themselves of same defence to defeat recovery on another of the $500 bonds, may be considered together.

In support of their right to do so, defendants rely on the principle announced in Good v. Good, 9 W. 567, and 3 W. & S. 475, viz., that, under the plea of failure of consideration, as distinguished from the plea of set-off, the defence is equitable and inherent in all the securities founded on the same consideration and, therefore, applicable to successive actions on any of them, till the defendant is compensated to the extent of his loss. As explained in the case last cited, this does not mean that each security shall bear only a pro rata or ratable proportion of the

general abatement, but, as suit is brought on any security, founded on the same consideration, the plea of failure of consideration, if successful, dispenses with a certificate of the balance when the amount of the loss is greater than the claim, and the verdict is then, generally, for the defendant. The remainder of the loss or damage proven is applicable as a defence, under the same plea, to a subsequent suit on any of the same securities until the entire damage is exhausted, and defendant compensated.

That principle, recognized in Rice v. Olin, 79 Pa. 391, and other cases, is just and equitable, and, under the facts found by the jury, it was properly applied in this case. In the former suit on one of the $500 bonds, defendants obtained partial compensation to the extent of that claim, and, as has been settled by the verdict in this case, they were entitled to additional compensation for same failure of consideration to the extent, at least, of the balance due on the mortgage. The verdict and judgment in former suit were tantamount to payment of the $500, and interest on account; and by their verdict the jury has impliedly found that in addition thereto, defendants' damage by reason of the failure of consideration was at least equal to the amount claimed by plaintiffs in this suit.

The authorities cited and relied on by plaintiffs are inapplicable to the special facts of this case as established by the verdict. The question was one of fact solely for the jury, and was submitted to them under proper instructions. If, in arriving at the conclusion they did, those instructions were disregarded, the remedy was in the court below, not here. That court appears to have thought that substantial justice was done and, therefore, refused a new trial.

The fourth and fifth specifications relate to the road in question, which plaintiffs contended was an open, notorious, and visible easement upon the lot. That, under the evidence, was a question of fact for the jury. The subject has already been sufficiently noticed.

There is nothing in either the sixth or seventh specifications that require special notice. In view of what has been said the points covered by them respectively were rightly refused.

The eighth specification of error is not sustained. We are not at all satisfied there was any error in the qualification com-

plained of. An examination of the evidence inclines us to the conclusion that the court was right in calling the attention of the jury to Mr. Eby's declarations, as was done in the general charge, and also in the qualified refusal of defendant's seventh point.

We find nothing in the record that calls for a reversal of the judgment.

Judgment affirmed.