James W. Friend *v.* The Oil Well Supply Co., Appellant.

*Landlord and tenant—Easement—Servitude—Railroad bridge—Eviction.*

Where a continuous and apparent easement or servitude is imposed upon land, a lessee of the servient property in the absence of an express reservation or agreement on the subject takes the property subject to the easement or servitude.

Plaintiff leased land to the defendant on which there had stood in practically the same condition for many years a railroad viaduct. The railroad had the right to maintain the viaduct on the land, under condemnation proceedings and under a release of a former owner of the land. Subsequent to the date of the lease the railroad company found it necessary during a few months of defendant's term to repair and practically reconstruct the viaduct. In consequence of this the defendant was more or less inconvenienced, and deprived of the beneficial enjoyment of a part of the premises during that time, but when this lease was made, the defendant was in possession under a former lease, and it retained the possession. exercising free control of the property, until the end of this lease. *Held,* that the defendant was not released from payment of rent either by the existence of the viaduct or the act of the railroad in reconstructing it.

Argued Oct. 27, 1896. Appeal, No. 31, Oct. T., 1896, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1894, No. 357, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN, and FELL, JJ. Affirmed.

Assumpsit for rent. Before PORTER, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $7,068. Defendant appealed.

*Errors assigned* were (1) portion of charge quoted in the opinion of the Supreme Court; (2, 3) refusal of defendant's points, quoted in the opinion of the Supreme Court.

*M. A. Woodward,* for appellant.—There was an eviction of the defendant: Hoeveler v. Fleming, 91 Pa. 322; Seabrook v. Moyer, 88 Pa. 417; Lanigan v. Kille, 97 Pa. 120.

The tenant may by way of defense show failure of consideration for the rent, by evidence of disturbance of his occupation

and enjoyment of the premises: Beyer v. Fenstermacher, 2 Wharton, 95 ; Fairman v. Fluck, 5 Watts, 516 ; Browne v. Dickerson, 12 Pa. 372; Taylor on Landlord and Tenant, sec. 377 ; Dudley v. Folliott, 3 T. R. 584; Noble v. King, 1 H. Bl. 34.

*P. C. Knox, J. H. Reed* and *Edwin W. Smith,* for appellee, were not heard but argued in their printed brief.   Where a continuous and apparent easement or servitude is imposed upon the land, a purchaser, in the absence of an express reservation or agreement on the subject, takes the property subject to the easement or servitude : Cannon v. Boyd, 73 Pa. 179 ; Geible v. Smith, 146 Pa. 276 ; Ormsby v. Pinkerton, 159 Pa. 458 ; Eby v. Elder, 122 Pa. 342; Wood's Landlord and Tenant, secs. 447, 1104.

If the railway company did have the right to enter and repair, and it arose out of the occupation of their right of way, then this right was as apparent to the tenant as to the landlord, and the assertion of this right by the railway company cannot be an eviction : Washburn on Easements, 411.

A constructive eviction must be followed within a reasonable time by the tenants giving up possession : Edgerton v. Page, 20 N. Y. 281; Cram v. Dresser, 2 Sandf. 120 ; Seabrook v. Moyer, 88 Pa. 417.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 4, 1897:

There is practically no controversy as to any of the material facts in this case.   On March 12, 1892, by written agreement, plaintiff leased to defendant company, for one year from July 1, 1892, " all that portion of Eagle Rolling Mill " described therein, for the yearly rent of $6,000 payable monthly, etc.

Prior to date of said lease, the rolling mill had been occupied by the Oliver Iron & Steel Company under lease from plaintiff which expired on July 1, 1892.   By and with the consent of their lessor, that company had sublet part of said property to the defendant company, and it had entered upon the demised premises, and was in possession thereof prior to March 12, 1892, and continued in possession until July 1, 1893, the expiration of the first mentioned lease.   This suit was brought to recover the one year's rent due under that lease.   The defense was eviction by the Pittsburg, Cincinnati, Chicago & St. Louis

Railway Company under paramount title, etc.    On the trial, the learned judge refused to charge as requested in defendant's first and second points, viz : (1) " That under all the evidence the jury should find a verdict for the defendant;" and (2) " That the jury should not find against defendant any rent for any term of the lease beyond such time as the defendant had the full, free and uninterrupted enjoyment of the property as contemplated by the lease when given."    On the contrary, he instructed them as set forth in that part of his charge recited in the first specification of error, viz : " In view of the fact that the bridge stands there today practically in the same condition that it was in 1864, and has so remained clear down to the present time, save that the structure has been removed, one material taking the place of the other, or one piece of iron taking the place of another, the bridge being strengthened ; in view of the fact that the defendant was in possession at the time the lease was made and had operated this mill subject to the easement overhead ; in view of the fact that the injunction proceedings had been instituted before the first day of July (1892) and that, notwithstanding all that, the defendant remained in possession by its agents, and exercised the control of the property and retained possession down until the date of the expiration of the lease, we are led to affirm the point submitted by the learned counsel representing the plaintiff, ' That under all the evidence in this case the verdict must be for the plaintiff for the full amount of his claim.' "

The facts of which this instruction is predicated are not controverted ; nor does the record disclose a single disputed fact that was material to the defense, and should have been submitted to the jury.    The only question is whether the learned trial judge erred in directing a verdict for plaintiff, and in refusing both of the defendant's points above quoted.    We are all of opinion that he did not.

The railroad bridge or viaduct referred to by the court below was erected prior to 1865, and, having been destroyed by fire, was rebuilt in 1885.    From the date of its original construction until the present time it has stood on same abutments, etc.    The right of way for that part of the railroad, etc., was acquired by condemnation proceedings in the district court of Allegheny county, at No. 115, July term, 1855, in connection with the

release of James Wood, then owner of the Eagle Rolling Mill property, executed December 2, 1864, and duly recorded, etc. For the consideration therein set forth said Wood for himself, his heirs, executors, administrators and assigns granted and released unto the then owners of the railroad, their successors and assigns, forever, the right of way for their railroad tracks, bridges and abutments as the same are now located through, over and upon a certain tract of ground, and over a certain rolling mill, situate on the south side of the Monongahela river, at or near Saw Mill Run, being all the rights, liberties and privileges secured by the Pittsburg & Steubenville Railroad Company, by virtue of divers proceedings had in the district court of Allegheny county, at No. 115, July term, 1855, the said record and proceedings being taken and made a part of this release. He also released them " from all claims for damages by reason of the location of the said railroad and bridge of the said companies, through, over, or upon the tract aforesaid."

The perpetual servitude thus imposed upon a portion of the rolling mill property with all its incidental rights of maintenance, repair, reconstruction, etc., pertaining thereto, has been continuous, open and manifest to all who had anything to do with the property; and its effect on the servient property must have been contemplated by both lessor and lessee when the lease in question was executed. With this bridge or viaduct—constituting a section of the railroad—there upon the ground, the defendant went into possession as the subtenant of the Oliver Iron & Steel Company, and afterwards took the new lease from the plaintiff. It cannot be doubted that the defendant was fully aware of the open and visible servitude to which the demised property then was and would continue to be subject while in its possession as lessee.

It is well settled that where a continuous and apparent easement or servitude is imposed upon land, a purchaser of the servient property in the absence of an express reservation or agreement on the subject takes the property subject to the easement or servitude: Cannon v. Boyd, 73 Pa. 179; Geible v. Smith, 146 Pa. 276; Ormsby v. Pinkerton, 159 Pa. 458. This principle is not restricted to cases between the owner of the servient and the owner of the dominant property: Eby v. Elder, 122 Pa. 342. In that case the defense interposed to a purchase

money mortgage was that the land purchased was incumbered by a private right of way, and it was held that, "If, when land is conveyed, it is openly and plainly subject to an easement of way, the existence of an easement will be no defense to the payment of the purchase money, as a breach of the covenant against incumbrances implied from the words 'grant, bargain and sell.'"

In Memmert v. McKeen, 112 Pa. 315, the incumbrance that was claimed to be a breach of the implied covenant, etc., consisted of stone steps, belonging to the adjoining house, but so constructed as to occupy a portion of the sidewalk in front of plaintiff's house. Both houses formerly belonged to the defendant, who in 1865 sold the one to which the steps were appurtenant, and in December of the following year, sold the other to the plaintiff. The steps were then in existence plainly visible to the eye, and a servitude upon the property. After examining the house plaintiff's husband, as her agent, bought it, and therefore took it with his eyes open to the servitude. It was held, in substance, that the servitude was not an incumbrance within the meaning of the implied covenant; that assuming the steps to be an injury to plaintiff's property, the presumption was that such injury was in contemplation of the parties, and that the price was regulated accordingly. In the language of the court, the servitude "was a physical condition of the property, notorious in its character, and affecting its value; and under all the authorities we must presume the price to have been fixed with reference to it."

Other authorities to the same effect might be cited, but those above referred to are sufficient. The soundness of the underlying principle therein recognized cannot be questioned; nor is there any valid reason why the same principle should not be applied in cases between lessor and lessee, where it is clearly shown that the latter was fully aware of the fact that the demised premises or part thereof was subject to an open, notorious and permanent servitude or easement such as the railway viaduct, etc., in this case. In such cases, unless something to the contrary appears, it is fair to assume that the parties contracted with reference to the then existing condition of the premises, and that the lease was made and accepted subject to the railway company's right of way over some of the buildings com-

posing the rolling mill plant, together with all the incidental rights pertaining to such an easement. It so happened that the railway company found it necessary during a few months of defendant's term, to exercise some of those incidental rights in repairing and practically reconstructing its viaduct. In consequence of this, the defendant was more or less inconvenienced and deprived of the beneficial enjoyment of a part of the premises during that time; but that result was neither the fault of the plaintiff nor a matter over which he had any control. If an unreasonable time was consumed in the work of reconstruction, or if anything to defendant's injury was done by the railway company in excess of the authority acquired by the condemnation proceedings and release aforesaid, defendant company's remedy, if any it has, would be against the wrongdoer and not against the plaintiff.

It is unnecessary to consider the plaintiff's further answer to the defense against the payment of rent, viz: " that there was no eviction in this case." It follows from what has been said that there was no error in directing the jury to find for the plaintiff for the full amount of his claim. The authorities mainly relied on by the learned counsel for defendant are inapplicable to the undisputed facts of this case.

Judgment affirmed.