From R. H. Klein, Sunbury, Pa.

## Provident Title Company v. Dunk

*George Ross*, for plaintiff; *Vanartsdalen & Biester*, for defendants.

BOYER, J., August 6, 1934.—The facts involved in the above motions are briefly as follows: In and prior to June 1925, the defendant owned a tract of land in Bensalem Township, Bucks County, containing approximately 65 acres. On said date he conveyed a portion of that tract to one Loeffler, who on February 14, 1927, conveyed the same to Mrs. Wagner, who later by marriage became Mrs. Kosteski. In the deed to Loeffler, the defendant described the tract as being bounded by a street designated as Lincoln Avenue, lying on the remaining portion of the defendant's land. A year later, namely, on February 21, 1928, the defendant sold the remaining portion of the tract to a man named Schultz, a straw man in the transaction, who on February 27, 1928, conveyed the same tract to Roosevelt Cemetery Company, the real purchaser. The defendant had no knowledge that the cemetery company was the real purchaser and that

Schultz was merely used to conceal the fact of its purchase. The cemetery company at the time it took title had the same insured by Commonwealth Title & Trust Company, later merged with Provident Title Company, the plaintiff herein. Some time after the cemetery company acquired title to its premises and began to develop the tract purchased, Mrs. Kosteski brought a suit in equity on May 16, 1928, against the cemetery company to establish her right to the use of the strip of land as an easement or street known as Lincoln Avenue, 50 feet wide and 1,000 feet long. In this suit the court, on October 7, 1929, decreed that she was entitled to an easement over the said strip of land lying entirely upon the premises purchased by the cemetery company, and enjoined the cemetery company from interfering therewith. This decree was based upon the reference in the deed from Dunk to Loeffler to the said Lincoln Avenue as one of its boundaries, thereby making the easement a matter of record. In the deed from the defendant to Schultz and from Schultz to the cemetery company, the said easement was not excepted or referred to. The defendant's deed to Schultz contained the usual terms, "grant, bargain, and sell", as well as the usual form of general warranty, but contained no special warranty as to this or any other easement.

After the filing of the suit in equity but prior to the determination thereof declaring the existence of the easement, the cemetery company assigned to the plaintiff, Provident Title Company, all its rights arising as a result of the supposed breach of the express or implied covenant in the deed in consideration of settlement of the claim of the insured against the insurance company for $6,000. The latter thereupon brought this suit, as assignee, to recover the damages suffered by the cemetery company on the alleged breach of the warranty.

Upon the trial of the case, evidence was offered to show that at the time of and prior to the conveyance by the defendant to Schultz there were nine concrete markers along the lines of Lincoln Avenue, each extending above the ground a few inches, and also that a portion of the avenue was marked by its being graded inward upon the tract for a distance of about 100 feet from a public highway to provide access to the right of way from that highway. The testimony was rather vague as to how conspicuous or visible this easement was.

The evidence also showed that the title insurance company, when it searched the records, discovered the reference in the Loeffler deed to Lincoln Avenue upon the tract which Schultz was about to purchase, that it noted an exception thereto upon its settlement sheet, and that this exception was subsequently stricken off by the title insurance company with the knowledge of the cemetery company through its agents and attorney. The reason for striking off this exception was in dispute, the plaintiff claiming that it was stricken off because of alleged statements and representations on the part of the defendant, Dunk, that no such avenue existed but that it had been merely marked upon a plan of lots as a tentative or suggested plan of lot development. Each side asked for binding instructions, which were refused by the court and the case submitted to the jury.

The main question submitted to the jury beside that of damage was whether or not the cemetery company, grantee, had actual knowledge of the existence of Lincoln Avenue as an easement upon the tract which it was about to purchase, before taking a deed therefor, and whether the defendant had assured it there was none. The jury found in favor of the defendant. The evidence was uncontradicted that the insurance company had knowledge of the state of the

record as to Lincoln Avenue and had noted it upon the settlement sheet and that this fact was also known to the attorneys and agents of the cemetery company. There was also evidence from which a jury could well find that Lincoln Avenue was visibly marked upon the ground and that the agents of the cemetery company had been upon and examined the ground with a view of determining whether or not they should purchase it. There was also evidence that its agent had seen a plan of the said tract showing Lincoln Avenue laid out upon it.

The court instructed the jury that if the cementery company had actual knowledge of the existence of this easement upon the tract before it took title, regardless of whether it acquired that knowledge from the record of the recorder of deeds' office or from an examination of the premises, or both, and was willing to take title to the premises notwithstanding knowledge of such easement, then it must be held to have taken that fact into consideration in determining the price which it would pay for the land and was not now entitled to a verdict in its favor. To this part of the charge the plaintiff excepts, contending that the cemetery company was barred only if it acquired its knowledge from an actual examination of the premises and a discovery of the street or easement thereon; but that, if it acquired its knowledge through a search of the records, such knowledge will not raise a presumption of waiver and bar it from a subsequent claim for damages. While the plaintiff assigns numerous other reasons in support of its motions, the grounds referred to were the ones most strongly urged at argument and which the court considers the real legal issue in this case.

Both sides admitted that the easement, if it existed, was some detriment or damage to the cemetery company, but the evidence was in conflict as to the amount of such damages. The jury having found in favor of the defendant, the court could not possibly grant the plaintiff's motion for judgment n. o. v. and fix the damages. If upon the whole record the plaintiff was entitled to a verdict, his only remedy now is through a new trial, the amount of damages to be determined by a jury upon such retrial. The motion for judgment n. o. v. will therefore be dismissed.

It is conceded that, under the authority of a long line of Pennsylvania decisions, an easement upon real estate, not excepted in a deed of conveyance, constitutes a breach of the implied warranty imported by the words, "grant, bargain, and sell", as well as by the general warranty of title, contained in the deed in question. This has been held to be the proper construction of the Act of May 28, 1715, 1 Sm. L. 94, sec. 6. The courts have made distinction between several types of cases involving such breaches of warranty as to the effect of notice or knowledge of the defect in the title. In the first place, they distinguish between executed and executory contracts, holding that there may be a presumption of a waiver of the breach in the case of executed contracts while in the case of executory contracts no such presumption exists: Strong v. Brinton, 63 Pa. Superior Ct. 267. Then again, as to the effect of notice of defects in the title, the courts distinguish between such defects as affect the title itself, as outstanding deeds, life interests, mortgages, etc., and those which affect the physical condition of the property, such as public roads, rights of way, water rights, and other easements: Memmert v. McKeen, 112 Pa. 315. In that case, it is said in the opinion of Mr. Justice Paxson (p. 320) : "Incumbrances are of two kinds, viz., 1. Such as affect the title; and 2. Those which affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or a right of way, of the latter. Where incumbrances of the former class exist, the covenant referred to, under all the

authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title: Cathcart v. Bowman [5 Pa. 317], *supra;* Funk v. Voneida, 11 S. & R. 109. Such incumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them; hence knowledge, actual or constructive, of their existence, is no answer to an action for breach of such covenant. Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects not title, but the physical condition of the property, a different rule prevails. Thus it was held in Peterson v. Arthurs, 9 Watts, 152, that where the owner had covenanted to convey certain lots free from all incumbrances, a public road, which occupied a portion of such lots, was not an incumbrance within the meaning of the covenant. This is not because of any right acquired by the public, but by reason of the fact that the road, although admittedly an incumbrance, and possibly an injury to the property, was there when the purchaser bought, and he is presumed to have had knowledge of it. In such and similar cases there is the further presumption that if the incumbrance is really an injury, such injury was in the contemplation of the parties, and that the price was regulated accordingly."

See also Peterson v. Arthurs, 9 Watts 152; Wilson v. Cochran, 46 Pa. 229; Howell v. Northampton R. R. Co., 211 Pa. 284; Strong v. Brinton, 63 Pa. Superior Ct. 267; Eby et al. v. Elder et al., 122 Pa. 342; Friend v. The Oil Well Supply Co., 179 Pa. 290.

The case of Memmert v. McKeen, supra, which appears to be the leading case on this subject, calls attention to the fact that there is no difference between the easement of a public road and a private easement, such as a right of way or a water right of which the grantee had knowledge. It is also significant that in that case the record title disclosed the easement involved therein, namely, steps from an adjoining house upon and over land of the plaintiff. The court says (p. 322) : "The steps were then in existence, plainly visible to the eye, and a servitude upon the property, even if the deed to Reilly [the adjoining owner] had contained no such stipulation." There is in this language a clear inference that, if Reilly had secured his information from the record, he would likewise have been barred by it.

The plaintiff contends that actual knowledge or notice of the encumbrance at the time title is taken will not bar the grantee from claiming damages under the breach of the warranty, unless such actual notice was acquired from an inspection of the physical property, and that no other kind of notice will act as a bar. It bases this contention largely upon the case of Wilson v. Cochran, 46 Pa. 229, quoting the following excerpt from the opinion of the Supreme Court at pages 232 and 233: "But Schultz's private way in this case had no public policy or public law to support it, it rested wholly in a private grant, and it was a grant of an interest in the land, a vested estate that would pass by deed and would descend to heirs, and of its existence the purchaser had no actual notice, but only that constructive notice with which an unsearched registry affects him. Neither the facts nor the reasonings of Peterson v. Arthurs can be adjusted to a case like the present."

We cannot read into this quotation any intent on the part of the Supreme Court to declare that "actual notice" as used by it meant actual notice from one particular source or acquired in one way only. On the contrary, in our opinion, the court clearly implied that there were two kinds of notice, one actual notice and the other constructive notice, such as "an unsearched registry". There is a further implication that "actual notice" means exactly what it says, namely, real knowledge as distinguished from constructive notice, regardless

of the source of such knowledge. Counsel for plaintiff have failed to show us any principle or sound reason which would justify a distinction as to the sources of actual knowledge. The courts have given reasons for holding that actual knowledge will bar a claim for damages, namely, the presumption, which is merely a rule of common sense, that where a prospective purchaser had actual knowledge of an easement existing upon the real estate he was about to buy he took that fact into consideration in determining what price he was willing to pay for the premises, in the same manner as he would take into consideration the size, location, grade, drainage, fertility of soil, and countless other physical conditions that go to determine the value of a property. If a purchaser had only record notice of those factors, it is reasonable to suppose he would determine the value of the property by them. If so, why is it not equally reasonable to presume that he would take record notice of a right of way into consideration in fixing the value of the property?

There is no merit in the contention that it was incumbent upon the defendant to prove an open definite agreement to make a reduction in the price of the property on account of the easement. This is no more necessary than a public declaration of the buyer's deductions by reason of a stony field, a swamp, or other physical defect. These calculations are usually made secretly in a man's own mind. If a defect is discovered after the first offer and no change is made in the offer, it must be presumed that the buyer is still satisfied with the price he offered. Actions speak louder than words, and a buyer cannot be heard to say that in the secret of his own mind he made no allowance for the defect. This would destroy and nullify the presumption which the courts have said exists in such cases.

The exceptions to the answer of the court to several points submitted for charge to the jury are without merit. Some were refused as stated because they included conclusions of fact, but were fully answered in the general charge in accord with the request. Another, the fourth, assumed a complete eviction instead of a partial eviction from Lincoln Avenue, i. e., to the extent of the rights of the dominant estate only, and was therefore misleading. This was also fully explained in the general charge. The sixth point erroneously assumes and states that the search of the title records developed only "constructive notice". On the contrary, the plaintiff's own evidence showed that it secured actual notice from the records. Had it failed to search the records, or, having searched the records, failed to discover the notice in them, then it would have had only constructive notice.

The additional reasons for a new trial filed refer largely to questions of damages, which are now immaterial in view of the jury's general finding in favor of the defendant. The exceptions relating to rulings on evidence, in our opinion, are without merit and do not require any discussion. Several exceptions relate to offers of pleading in evidence. Paragraph 10 of the statement and answer, relating to special use made of the premises by plaintiff after purchase, were properly refused as immaterial. Furthermore, they relate solely to questions of damages which are now immaterial. Paragraph 12 was inadmissible because denied in paragraph 12 of defendant's answer.

Now, August 6, 1934, the motion for judgment in favor of the plaintiff n. o. v. is dismissed. The motion for a new trial is dismissed and a new trial refused.                    From Isaac J. Vanartsdalen, Doylestown, Pa.