## KUTZ vs. McCUNE.

An easement obviously and notoriously affecting the physical condition of land at the time of its sale, is not embraced in a general covenant against incumbrances.

APPEAL from the Circuit Court for *Jefferson* County. The case is stated in the opinion.

*L. B. Caswell*, for appellant.

*I. W. & G. W. Bird*, for respondent.

PAINE, J.   The defendant conveyed to the plaintiff a tract of land by a deed containing the usual covenants of seizin and against incumbrances, without any exceptions to those covenants.   At the time of the purchase, between thirty and forty acres of the land were flowed by a mill-pond created by a dam on land not belonging to the defendant, which dam had been maintained long enough to create a prescriptive right in the owner of it, to flow the land in question. This action was brought for a breach of the covenants of seizin and against incumbrances, by reason of this existing right of flowing.

The circuit court instructed the jury that it made no difference whether the purchaser was fully aware of the situation of the property at the time of purchasing, or not; and that the right of flowing constituted an incumbrance that occasioned a breach of the covenant, for which the defendant was liable.   This, I think, was error.   That such a right does not constitute a breach of the covenant of seizin, see Rawle on Covenants, pp. 83, 142.   It may have been an incumbrance.   But there is a principle recognized by adjudged cases, and resting upon sound reason and policy, which holds that purchasers of property obviously and notoriously subjected at the time to some right of easement

or servitude affecting its physical condition, take it subject to such right, without any express exceptions in the conveyance; and that the vendors are not liable on their covenants by reason of its existence. This principle has been applied in the case of a highway opened and in use upon the land at the time of the conveyance. Rawle on Covenants, 141 et seq.; *Scribner v. Holmes*, 16 Ind., 142.

This principle seems fully applicable to the present case. There is no material difference, so far as this question is concerned, between a public highway and a right of flowing the land by a mill-pond in actual existence upon it. In the case of the highway the doctrine does not rest upon the fact that the right is in favor of the public, but that the easement is obvious and notorious in its character, and that therefore the purchaser must be presumed to have seen it, and to have fixed his price for the land with reference to its actual condition at the time. And certainly a mill-pond upon land is quite as notorious an object as a highway, and the reason for the presumption just suggested is quite as strong. The contrary doctrine has been held, in respect to highways, in Massachusetts and some of the other New England states; though in *Herrick v. Moore*, 19 Maine, 313, the court seem to imply that if the highway had been actually opened and in use, and the plaintiff knew of its existence at the time of his purchase, their conclusion would have been different. But, however that might have been, the weight of the argument is decidedly in favor of the rule held in Pennsylvania in *Patterson v. Arthurs*, 9 Watts, 152, and approved in *Whitbeck v. Cooke*, 15 Johns., 483. And to hold that every highway, in open notorious use as such, upon land at the time of its conveyance, would constitute a ground of action for a breach of the covenant against incumbrances, unless specially excepted, would undoubtedly, in the language of Chief Justice SPENCER, "open a

floodgate of litigation" in this state, as well as in New York.

There is another class of cases which strongly support the same conclusion. The principle which they establish may be briefly stated, in the language of the syllabus to *Seymour v. Lewis*, 2 Beas. (N. J.), 439, as follows: "Where the owner of two tenements sells one of them, the purchaser takes the tenement or portion sold, with all the benefits and burthens which appear at the time of the sale to belong to it, as between it and the property which the vendor retains." The case cites a great number of authorities illustrating the rule. It was also in accordance with the French law, as shown in Washburn on Easements, pp. 16, 17. And a very strong instance of its enforcement is found in the recent case of *Harwood v. Benton*, 32 Vt., 724. That was a case where the owner of a mill-pond and the surrounding lands conveyed a lot not bounded on the pond, but adjacent to it, and which was sometimes flowed, though not continuously. The deed contained the usual covenants, with no exception or reservation. Yet the court held that the vendor himself retained the right to flow the lot conveyed as it had been theretofore flowed, and was not liable on his covenants by reason of the existence of such right. According to that case, if the defendant here had himself owned the mill and dam which created the mill-pond, he would have retained the right to flow the land as it was flowed, and would not have been liable on the covenants. Can there be any stronger reason for holding him liable now? If the law, without any exception in the deed, will, from the presumed understanding of the parties, based upon the obvious condition of the property sold, imply a reservation in favor of the vendor, should it not equally imply one upon the same grounds, when the continued existence of the right is of no benefit to the vendor?

True, there is a technical difference, which is alluded to in the case last cited. That is, that where both parcels of land are owned by the same person, the servitude imposed on a part in favor of the rest is not technically an easement, because no man can have an easement in his own land. But the implied reservation in his favor takes effect at the same instant with his covenants on the delivery of the deed, and then constitutes an easement in his favor, and consequently an incumbrance. And certainly there is no more ground for supposing that the purchaser in such case intends to take the property subject to such reserved right in favor of his vendor, than there is in the case where the property in whose favor the servitude is imposed, is owned by a stranger, to suppose that he intended to take it subject to that. This class of decisions does not rest at all upon this technicality, but upon the broad substantial grounds constituting the foundation of the former class. And the court in Vermont quotes from Gale & Whately on Easements the following passage, which puts the vendor only on the same footing in this respect with other adjoining owners: " There is no reason why a purchaser should not exercise the same degree of caution in ascertaining what easements his projected purchase is liable to in favor of his vendor as well as in favor of other adjoining owners." The substantial foundation for both classes of decisions is, the strong natural presumption that the parties sell on the one hand, and buy on the other, the property in its actual physical condition, and subject to such rights, either in favor of the vendor or others, as that physical condition obviously indicates, without any exceptions or reservations concerning them in the deed. So that the decisions that an existing highway in favor of the public, and a right of flowing the land conveyed by the vendor as it was done at the time of the conveyance, do not constitute breaches of the covenant against

incumbrances for which the vendor is liable, really rest upon the same principle.

The court below compared it to the case of a mortgage on the property sold, known to the purchaser. But the two cases are essentially different. A mortgage does not affect the physical condition of the property at all. It is a mere incident to a debt of the vendor; and where the purchaser takes his covenant against incumbrances, there is no reasonable ground for supposing that he intended to have his land subsequently sold to pay the vendor's debt, or else to pay it himself. It is so different from the question that has been considered, that there is really no comparison between them.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.