## Memmert *versus* McKeen.

| | |
|---|---|
| 112 | 315 |
| 116 | 307 |
| 112 | 315 |
| 179 | 294 |

1. By virtue of the Act of May 28th, 1715, the words, " grant, bargain and sell " contained in a deed, are a covenant of seisin, a covenant for quiet enjoyment, and a covenant against incumbrances.

| | |
|---|---|
| 112 | 315 |
| e203 | [1] 26 |
| 203 | [2] 27 |

2. Incumbrances are of two kinds: (1) Such as affect the title; and (2) such as affect only the physical condition of the property.   Where an incumbrance of the first class exists, the covenant referred to is broken the instant it is made, and it is of no importance that the grantee had notice of it, actual or constructive, when he took the title.   Where, however, an incumbrance of the second class exists a different rule prevails.   It is presumed (*a*) that the grantee bought with notice of it; (*b*) that it was in contemplation of the parties, and that the price was fixed with reference thereto.

| | |
|---|---|
| 112 | 315 |
| 211 | [2]287 |

3. An incumbrance of the second class, which affects not the title but the physical condition of the property, is not within the meaning of a covenant of general warranty in a deed, nor of the Act of 1715.

March 5th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

ERROR to the Court of Common Pleas of *Northampton county :*   Of July Term, 1885, No. 79.

Covenant brought by William Memmert and Babetta, his wife, in right of said wife, against Henry McKeen, to recover damages for a breach of covenant against incumbrances in a deed of conveyance.   Pleas, *non est factum, non infregit conventione,* covenants performed, covenants performed *absque hoc.*

The following are the facts of the case as they appeared on the trial before REEDER, J.:

By deed dated December 22d, 1864, Thomas McKeen and wife conveyed to Henry McKeen, the defendant, certain premises upon the east side of Second street, between Northampton and Spring Garden streets, in the borough of Easton. Included in this conveyance were the houses and lots afterward conveyed by the said Henry McKeen to John Reilly and to Babetta Memmert, the plaintiff.

By deed dated December 30th, 1865, the said Henry Mc-Keen and wife conveyed to John Reilly a brick dwelling house and lot of ground, being a portion of the above described premises. This deed contained the following provision: "Together with the right to the said John Reilly, his heirs and assigns, to keep and maintain the front steps to said brick dwelling house as they are now erected."

By deed dated December 1st, 1866, for the consideration therein named, to wit, $1,800, the said Henry McKeen conveyed to Babetta Memmert, the plaintiff, a certain lot or piece of ground situate on the east side of Second street, in the borough of Easton, containing in front or width upon Second street, forty-seven and eight-tenths feet, joined upon the north by the lot conveyed (as above) to John Reilly. This deed to Babetta Memmert contains a clause of special warranty.

The building upon the Reilly lot at the time of the conveyance was a two-and-one-half-story brick dwelling house, with a basement story, the front door to which was reached by a winding flight of steps. These steps were so constructed that they projected over in front of the Memmert house three feet and six inches, and extended out upon the pavement four feet and ten inches. The building upon the Memmert lot at the date of its purchase by plaintiff was a double one-and-a-half-story stone house.

About two years after the purchase of the property by Babetta Memmert, she desired to rebuild the same, and upon notice to John Reilly (since deceased) to remove the steps, she was informed that he had the right to maintain the same by deed from his grantor. Mr. Memmert then applied to Mr. Swift, who was Mr. McKeen's agent at Easton, to have the incumbrance removed, and the agent's answer was, "That is all right; that will be made good by Mr. McKeen." As no steps were taken by the defendant to have the obstruction removed, Mr. Memmert applied to Mr. McKeen personally, three or four times, but the latter always made excuse that the plaintiff should go to Mr. Reilly.

All efforts to secure relief having failed, and the plaintiff

claiming that the words "grant, bargain, sell," in the deed, are an express covenant against incumbrances done or suffered from the grantor, this suit was brought to recover damages for the breach of covenant, and the permanent injury to the premises.

The plaintiff presented, *inter alia*, the following points:

1. That as the evidence is undisputed that at the time the property was purchased by Babetta Memmert, the steps of the adjoining property, which was formerly owned by the defendant, and by him sold to John Reilly, projected in front of the property sold by the defendant to Babetta Memmert, three feet six inches, it constituted an incumbrance for which the defendant was bound to compensate the plaintiff.

*Ans.* This we deny. (First assignment of error.)

3. That if it was known to Babetta Memmert at the time she purchased, that the steps projected three feet six inches in front of the property sold to her, she is nevertheless entitled to recover damages under the covenants in the deed.

*Ans.* This point we deny. (Second assignment of error.)

4. Under all the evidence in the case the verdict must be in favor of the plaintiff.

*Ans.* This point we also deny. (Third assignment of error.)

The defendant presented, *inter alia*, the following points:

1. Under the undisputed testimony of the plaintiff there can be no recovery by the plaintiff in the present case.

*Ans.* This point we affirm. (Fourth assignment of error.)

2. There can be no recovery under the pleadings in this case.

*Ans.* That we affirm. (Fifth assignment of error.)

3. Under all the evidence in the case the verdict must be for the defendant.

*Ans.* That also we affirm. (Sixth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

So we say to you, gentlemen of the jury, that in this case, if Henry McKeen and William Memmert went upon this property at the time of the purchase by Memmert, as was testified to you by Henry McKeen and William Memmert both, and there was a patent, visible, and open encroachment upon the premises conveyed to William Memmert, of three feet and over, of the steps of the Reilly house beyond the line of the two buildings, then we say to you that under the decisions commencing with the case of Patterson v. Arthurs, in 9 Watts, 152, and ending with that of Wilson v. Cochran, 12 Wr., 112, that the law presumes that the vendee purchased and agreed upon the price with full knowledge of that defect or incum-

brance, and with the knowledge of that incumbrance in his mind, estimated and fixed the value of the property which he bought; that is to say, that the law presumes that he paid the price agreed upon because of the existence of that incumbrance, and that if he paid the price at the time agreed upon, with full knowledge of the existence of that incumbrance, your verdict now should compel him to abide by that price. We therefore say to you, gentlemen of the jury, that under the instructions of the court, as we understand the law, it will be your duty to render a verdict in this case in favor of the defendant. (Seventh assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error, *inter alia*, the answer of the court to the points of the plaintiff and of the defendant, and so much of the general charge as is above set out.

*James W. Wilson* and *E. J. Fox*, for plaintiffs in error.— What is the effect of the words "grant, bargain, sell," under the sixth section of the Act of May 28th, 1715? Construing the provisions of this section in Seitzinger *v.* Weaver, 1 Rawle, 382, following the earlier case of Funk *v.* Voneida, 11 S. & R., 112, Chief Justice GIBSON says: "By this it evidently intended to give the vendee the benefit of two distinct covenants, a covenant of seisin, as regards defeasibility from the acts of the vendor, and a covenant for quiet enjoyment against disturbance by the vendor, or those claiming under him."

It was held in Lessees of Grotz *v.* Ewalt, 2 Binney, 98, that the words "grant, bargain, sell," amount to a covenant, "that the grantor has done no act or created any incumbrance whereby the estate granted by him may be defeated."

To the same effect are Whitehill *v.* Gotwalt, 3 P. & W., 313; Kuepper *v.* Kutz, 8 P. F. S., 480; Shaffer *v.* Greer, 6 Norris, 370.

When is the covenant broken? It is settled beyond dispute that the covenant created by the words "grant, bargain, sell," is broken as soon as executed if there be an incumbrance on the land created by the grantor: Cathcart *v.* Bowman, 5 Barr, 317; Funk *v.* Voneida, *supra*; Seitzinger *v.* Weaver, Id.; Kuepper *v.* Kurtz, Id.

What constitutes an incumbrance? Rawlé answers (Cov. for Title, p. 94): "Within the present century an incumbrance has been defined to be 'every right or interest in the land which subsist in third persons, to the detriment of the value of the land, but consistent with the passing of the fee by the conveyance.'"

[Memmert v. McKeen.]

- The existence of a paramount right of way has been held to be an incumbrance ; and so it has been held of a right of way for a railroad ; a right to cut and maintain a drain or other artificial water course, a right to cut timber, &c.: Rawle Cov. Tit., p. 100.

Conveyance to .a stranger of the timber on the land with the privilege of cutting it during a term : Cathcart v. Bowman, *supra.*

The lien for a municipal improvement when the work was commenced during the grantor's title : Shaffer v. Greer, *supra.*

A right to transport coal and minerals : Pegg v. Rist, 15 W. N. C., 70.

In other states the existence of a paramount right to take water from a spring upon the land conveyed, and the incidental right of way over the land, have been held to be incumbrances : Harlow v. Thomas, 15 Pick. (Mass.), 66 ; Morgan v. Smith, 11 Ill., 194 ; Mitchell v. Warner, 5 Conn., 497 ; Lamb v. Danforth, 59 Maine, 322.

In the case at bar the existence of the paramount right to maintain the steps to the Reilly house as they now are upon a portion of the premises conveyed by the defendant to the plaintiff (the grant of the right which exists in the third person having been made by the defendant himself), is an incumbrance within the meaning of the statute.

*W. S. Kirkpatrick,* for defendant in error.—The rule of the French law, as laid down in the French civil code, may be used as a formula to express the rule of the common law upon this subject. " If the proprietor of two estates between which there exists an apparent sign of servitude disposes of one of these estates without inserting in the contract any stipulation relative to the servitude, it continues to exist actively or passively in favor of the land alienated or over the land alienated ": Code Napoleon, book 2, tit. 4, § 694 ; Lampman v. Milks, 7 Smith (N. Y.), 507 ; Kilgour v. Aschcom, 5 Harr. & Johns., 62 ; Sheister v. Todd, 10 S. & R., 63 ; Wright v. Ore Co:, 9 Wr. 475.

Every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for : United States v. Appleton, 1 Sumn., 502. See also Palmer v. Fletcher, 1 Ler., 122 ; Riviere v. Bower, 1 R. & M., 24 ; Kilgour v. Aschcom, 5 Harr. & Johns., 82 ; Seymour v. Lewis, 2 Beasley, 459 ; James v. Jenkins, 34 Md., 1 ; Patterson v. Arthurs, 9 Watts, 152 ; Wilson v. Cochran, 12 Wr., 106.

Mr. Justice PAXSON delivered the opinion of the court, April 19th, 1886.

The deed from Henry McKeen to Babetta Memmert contained the usual clause of special warranty, as also the words "doth grant, bargain, sell," &c. By the sixth section of the Act of 28th May, 1715, it is provided that "all deeds to be recorded in pursuance of this Act, whereby any estate of inheritance in fee simple shall hereafter be limited to the grantee or his heirs, the words grant, bargain, and sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit, that the grantor was seised of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor, excepting the rent and services to the lord of the fee, as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed; and the grantee, his heirs, executors and administrators and assigns may, in any action, assign breaches as if such covenants were expressly inserted," &c., &c.

By virtue of this Act the words "grant, bargain and sell," contained in the deed, are a covenant of seisin, a covenant for quiet enjoyment, and a covenant against incumbrances. If, as was alleged, there was an incumbrance against the property at the time of the sale by Henry McKeen to Babetta Memmert, the covenant against incumbrances was broken as soon as made: Cathcart *v.* Bowman, 5 Pa. St. Rep., 317.

Incumbrances are of two kinds, viz., 1. Such as affect the title; and 2. Those which affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or a right of way, of the latter. Where incumbrances· of the former class. exist, the covenant referred to, under all the authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title: Cathcart *v.* Bowman, *supra;* Funk *v.* Voneida, 11 S. & R., 109. Such incumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them; hence knowledge, actual or constructive, of their existence, is no answer to an action for breach of such covenant. Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects not title, but the physical condition of the property, a different rule prevails. Thus it was held in Patterson *v.* Arthurs, 9 Watts, 152, that where the owner had covenanted to convey certain lots free from all incumbrances, a public road, which occupied a portion of such lots, was not an incumbrance within the meaning of the covenant. This is not because of any right acquired by the public, but by reason of the fact that the road, although admittedly an incumbrance,

[Memmert v. McKeen.]

and possibly an injury to the property, was there when the purchaser bought, and he is presumed to have had knowledge of it. In such and similar cases there is the further presumption that if the incumbrance is really an injury, such injury was in the contemplation of the parties, and that the price was regulated accordingly. It was said by Justice KENNEDY, in the case cited, "Although a public highway no doubt is, in many instances, an injury instead of a benefit to the holder or owner of the land upon which it is located, and therefore tends to lessen its value in the estimation of a purchaser, yet it is fair to presume that every purchaser, before he closes his contract for his purchase of land, has seen it, and made himself acquainted with its locality and the state and condition of it, and, consequently, if there be a public road or highway open or in use upon it, he must be taken to have seen it, and to have fixed in his own mind the price that he was willing to give for the land, with a reference to the road, either making the price less or more, as he conceived the road to be injurious or advantageous to the occupation and enjoyment of the land." See also Wilson v. Cochran, 48 Pa. St. Rep., 107. In the case of Kutz v. McCum, 22 Wins., 628, the land conveyed had been for a time, long enough to create a presumptive right, flooded by a mill pond created by a dam on adjoining property, and it was held that the right of flooding was not an incumbrance within the covenant; that purchasers of property which was obviously and notoriously subject at the time to some easement or servitude affecting its physical condition, take it subject to such right without any express exceptions in the conveyance, and that vendors are not liable on their covenant by reason of its existence. "This principle," said the court, "has been applied in the case of a highway opened and in use on the land at the time of the conveyance . . . . . seems fully applicable to the present case. There is no material difference, so far as this question is concerned, between a public highway and a right of flowing the land by a mill pond in actual existence upon it. In the case of a highway the doctrine does not rest upon the fact that the right is in favor of the public, but that the easement is open and notorious in its character, and that, therefore, the purchaser must be presumed to have seen it, and to have fixed his price for the land with reference to the actual condition at the time."

In the case in hand the alleged incumbrance consists of stone steps belonging to the adjoining house, and so constructed as to occupy a portion of the sidewalk in front of plaintiffs' house. Both houses had originally belonged to the defendant below. With the steps in this condition he sold

one of the houses to John Reilly in 1865, by a deed containing this clause: "Together with the right to the said John Reilly, his heirs and assigns, to keep and maintain the front steps to said brick dwelling house as they are now erected." This fixed the servitude on the brick dwelling house as against McKeen, his heirs and assigns. McKeen sold said house to the plaintiff, as before stated, December 1st, 1866. The steps were then in existence, plainly visible to the eye, and a servitude upon the property, even if the deed to Reilly had contained no such stipulation. The husband of the plaintiff, as the agent, bought the house, examined it before doing so, and therefore took it with his eyes open to the servitude. It was a physical condition of the property, notorious in its character, and affecting its value, and, under all the authorities, we must presume the price to have been fixed with reference to it. If a recovery can now be had in damages under the covenant against incumbrances, the plaintiff will be twice paid. Further, the street in front of the house is as much an incumbrance, for anything we can see, as the steps upon the sidewalk, yet no one at this day will seriously contend that a public street, occupying a portion of a lot on which a house is erected, is an incumbrance within the meaning of the covenant of general warranty or the Act of 1715.

We find no error in this record.

, Judgment affirmed.