FARRINGTON *et al.* v. TOURTELOTT.

*(Circuit Court, W. D. Missouri, W. D.   September 2, 1889.)*

1. SPECIFIC PERFORMANCE—CONTRACT—INCUMBRANCES.
    Plaintiffs filed a bill for the specific performance of a contract to purchase certain land on delivery to the defendant of an abstract of title showing the property to be free from all incumbrances, and alleged performance on their part. Defendant alleged that a railway had a right of way over the land for 20 years. Plaintiffs filed an amended complaint, alleging that defendant knew of such fact at the time the contract was made, and that the right of way enhanced the value of the property within the knowledge of both parties to the contract. *Held,* that a demurrer to the amended bill must be sustained on the ground that plaintiffs have sought therein to contradict and vary a written contract.

2. SAME.
    Such right of way is an incumbrance on the property.

**In Equity.** Bill for specific performance.
*Crittenden, McDougal & Stiles,* for plaintiffs.
*Pratt, McCrary, Ferry & Hageman,* for defendant.

PHILIPS, J. This is a bill for specific performance **of a contract respecting** the sale of certain real estate situated in the west bottoms of Kansas City, Mo. The contract provides, among other things, that—

"The sellers are to furnish, within five days from the date hereof, a complete abstract of title to said property from United States government, and such usual certificates as may be required by the buyer as to judgments and mechanics' liens; * * * and the buyer to have twenty days for the examination thereof. * * * If, upon examination, it is found that the sellers have a good title in fee to said property, they are to execute and deliver to the buyer, or order, a general warranty deed thereto, properly executed, and free and clear of all liens and incumbrances whatsoever, except only such as are to be assumed by the buyer."

To the original bill filed herein the respondent interposed as a defense that at the time of the making of the contract there was, and now is, an incumbrance on the real estate in the form of an easement in favor of the Missouri Pacific Railway Company, as assignee of one George Fowler, for laying down and maintaining a railroad track thereon for a period of 20 years, which said track has been built, and is now in use thereon. To avoid this allegation of the answer the complainants have filed an amended bill, in which, among other things, it is alleged, in avoidance of said alleged incumbrance, that during the negotiations for the purchase of said premises the complainants and respondent went upon said property, and made a personal examination and inspection of the same; that said respondent saw and understood that said strip was being used for said railroad right of way; that he was informed of the length of time said easement was to exist; and that respondent understood and regarded said railroad track for switching purposes to be a valuable privilege, greatly enhancing the market value of said premises; and that said fact, so known to the purchaser, was the inducement which finally led him to the agreement; and that it was the chief consideration of the purchase thereof at the agreed price; and that in drawing the written contract no mention was made of said grant or right of way for the reason that it was well known and understood at the time by all the parties to greatly enhance the value of said premises. To this amended bill the defendant demurs, for the reason that in it complainants have undertaken to contradict and vary the terms of a written contract, and for other general grounds.

If the controlling question raised by this demurrer were *res novo,* the conclusion which my sense of right and justice would reach would probably conflict with what seems to be the current American authority. Accepting as true the allegations of the amended bill, the respondent (vendee) contracted for the property after personal inspection of the premises. He saw the railroad track through it, and bought the property because in his opinion this railroad switch enhanced the value of the purchase. To the common sense of mankind it would therefore seem to be a solecism—a contradiction in terms—to say that the purchaser could be heard

to assert that that was an incumbrance—a burden—in diminution of the value of the thing bought, which was regarded by both parties as an inducement to the purchase. The best recognized definition, perhaps, of the term "incumbrance" is that given by PARSONS, C. J., in *Prescott* v. *Trueman,* 4 Mass. 630: "Every right to or interest in the land granted to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance." The diminution of the value of the land being the crucial test, it would seem not unreasonable that where, in the opinion of the purchaser when he bought, and where the real fact confirmed his judgment, the physical condition complained of does not lessen the value of the property, either in the market or its use, it should logically follow that there was no incumbrance to become the subject of an action. And if, on the other hand, it be said that the written contract must be its own interpreter, without the aid of extrinsic facts, and that presumptively such easement is really an injury, it is answered with much force that the further presumption just as reasonably arises that such injury was in the contemplation of the parties when they made the contract after inspection; and that the purchaser paid, or agreed to pay, a correspondingly less price. Nothing is more natural or usual than that two parties negotiating respecting the price of a piece of property in full view, with obvious physical conditions, calculate the price based on the advantages or disadvantages supposed to arise on such apparent facts. From the opposite doctrine it might result that the purchaser would secure a double compensation for an injury resulting from such incumbrance—*First,* in taking it into consideration when he closed the contract; and, *second,* where the deed is executed, by recovering in an action for breach of covenant against incumbrances. The following adjudications support what may be deemed the minority view of this controversy: *Whitbeck* v. *Cook,* 15 Johns. 483; *Hymes* v. *Esty,* 36 Hun, 147; *Patterson* v. *Arthurs,* 9 Watts, 152; *Memmert* v. *McKeen,* 112 Pa. St. 315–320, 4 Atl. Rep. 542; *Kutz* v. *McCune,* 22 Wis. 628; *Smith* v. *Hughes,* 50 Wis. 627, 7 N. W. Rep. 653; *Lallande* v. *Wentz,* 18 La. Ann. 290.

It is impressive evidence of the fact that the foregoing views are rooted in the popular conviction of justice and right between man and man in such transactions that the legislatures of some of the states, whose courts have held the contrary view, have declared by statute against public roads and the like constituting an incumbrance. Rawle, Cov. (5th Ed.) § 82. The weight of authority, it must be conceded, is the other way; follow- the early case of *Kellogg* v. *Ingersoll,* 2 Mass. 97, in which it was held that a public road over the land conveyed constitutes an incumbrance. The authorities on this subject are collected in the case of *Burk* v. *Hill,* 48 Ind. 52. See Rawle, Cov. (5th Ed.) § 82. This doctrine has been extended to an easement like the one in question of a railroad running over the land. The argument in support of this theory proceeds on the assumption that such easement diminishes the value of the land, or that the term "incumbrance" is to have a broader meaning than that given by Chief Justice PARSONS. It contends that where the property is free from such servitude the purchaser may apply it to such uses and pur-

poses as he wills; but when it is subject to such servitude the portion occupied is not subject to his exclusive dominion, nor can he use and enjoy the whole and every part thereof as should be the incident of an absolute fee. And in respect to a purchase with actual knowledge of the physical condition of the property at the time of the execution of the contract it is said in *Beach* v. *Miller*, 51 Ill. 206:

"A person may warrant an article to be sound when both buyer and seller know it is unsound. So the seller may warrant the quantity or quality of an article he sells, when both parties know that it is not of the quality, or does not contain the quantity warranted. In fact the reason the purchaser insists upon covenants for title, or a warranty of quality or quantity, is because he either knows or fears that the title is not good, or that the article lacks in quantity or quality. If he were perfectly assured on those questions, he would seldom be tenacious in obtaining a covenant or warranty."

The doctrine of this case was followed in a most elaborate discussion in *Kellogg* v. *Malin*, 50 Mo. 496, since which the doctrine of that case has been the recognized rule in the courts of this state. To attempt, in this case, to establish in this jurisdiction a different rule, would tend to confusion and uncertainty in the law respecting such contracts. The rights of the citizen under such contracts might be made to depend upon which of the jurisdictions, state or federal, he was drawn into to litigate them. In the absence of a rule established by the highest court in the federal jurisdiction it is a conservative and wise rule to follow the one longest established governing the question in the state court. It follows that the demurrer to the amended bill is sustained. Judgment will go accordingly.