### FEURER v. STEWART.

(Circuit Court, D. Washington, N. D. November 5, 1897.)

COVENANT OF TITLE—CONSTRUCTION—CONVEYANCE OF TIDE-WATER LOTS.

 The owner of lots situated on a tide-water shore, and by the recorded plat extending into the water beyond the line of ordinary high tide, sold the same before the admission of the territory as a state, giving a general covenant of warranty of title "against all and every person and persons lawfully claiming the same, or any part thereof." By the statutes of the territory the owners of shore property were given certain privileges in its use beyond the water line, and by usage were permitted to build manufacturing establishments, extending from the shore to water of navigable depth, and it was for such purpose that the grantee bought the lots. After its admission, the state took possession of and used a part of the lots below the line of high tide. *Held*, that the covenant must be construed in view of the law under which the legal title of the submerged portion of the lots was vested in the general government, for the use of the state, and held to apply only to such rights and privileges as were incident to the ownership of the lots, subject to the paramount title of the state, and not as a warranty against such title.

Action by Louis Feurer against Olive J. Stewart on a covenant of warranty of title in a deed. Heard on demurrer to complaint.

Cox, Cotton, Teal & Minor and White, Munday & Fulton, for plaintiff.

E. S. Pillsbury and Preston, Carr & Gilman, for defendant.

HANFORD, District Judge. This is an action at law to recover damages for the breach of a covenant of general warranty of title

contained in a deed conveying certain lots situated on the shore of the harbor of the city of Seattle. The description of the premises contained in the deed refers to a plat, which shows the lots to be located partly on the land above the line of ordinary high tide and extending into the water; and the complaint alleges that in the negotiations for the sale of the property to the plaintiff, the defendant represented that said lots extended to deep water, or ship channel. The complaint also alleges that the lots were purchased by the plaintiff for use as a site for a large brewing and malting establishment, and that the location was especially valuable for that purpose, which fact was known to the defendant; and that the space between the shore and deep water was of greater value than the land portion of the lots. The deed was executed, and the transaction completed, prior to the date of the president's proclamation admitting Washington into the Union as a state, but after the constitution of the state had been framed and adopted by the people. The complaint recites that by her deed the defendant covenanted and agreed with the plaintiff "that she, her heirs, executors, and administrators, would warrant and forever defend to the plaintiff, his heirs and assigns, all and singular the premises in said deed described, with their appurtenances, against all and every person or persons whomsoever, lawfully claiming or to claim the same, or any part thereof." The complaint also charges that the state of Washington, through its proper officers, has in various ways asserted its ownership and control of that part of the premises situated below the line of ordinary high tide, and has surveyed and replatted the same, thereby appropriating a part of said space for public streets, and has included a part of the space within the harbor area, and has compelled the plaintiff to purchase the remainder from the state; and a breach of covenant is alleged in this: that the defendant has failed to defend the title to that portion of the premises situated in the water, against the claims and paramount title of the state. The defendant has demurred to the complaint on the ground that the same does not state facts sufficient to constitute a cause of action. The complaint shows affirmatively that the plaintiff knew the situation and character of the premises at the time of his purchase, and he must be presumed to have known that in law the title to the shore and bottom of this harbor was then vested in the United States government, in trust for the coming state of Washington, and that he could not, by purchase from an individual, acquire any right to such property maintainable against the state government. He does not pretend that he was misinformed as to the facts or the law, and his attorneys have distinctly disclaimed any right of action to recover damages for fraud or deceit. He stands upon his legal rights, to be measured by the terms of the covenant in the deed which he took from the defendant. Therefore the question in the case is whether failure of the defendant to defend the plaintiff's title as owner, against the acts and proceedings of the state government, constitutes a breach of covenant. By the statutes of Washington territory, owners of property extending to the shore of tide water were authorized to construct and maintain wharves and warehouses, in aid of commerce and navigation; and by common and general usage such owners were also permitted to have manufactur-

ing establishments, covering the space between the shore and water of sufficient depth for purposes of navigation, and no person other than the owner of the shore property could lawfully place any building or structure to interfere with the owner's rights, which were valuable and vendible. Such rights, however, were not adverse to the title which the state, as sovereign, has in the beds and shores of public navigable waters, because subject and subservient thereto. A shore owner could convey his title to such property with a covenant of warranty against lawful claims to the same which might be asserted by other persons, and become liable for a breach of such covenant. Probably these were the rights, and such the liability, which the defendant intended to convey and assume by her deed.

When an estate is conveyed by a deed describing it so that the parties must understand therefrom that the estate is subservient to a superior title, which cannot be extinguished nor acquired, the grantee takes its cum onere, and no right of action can accrue in his favor upon the covenants in the deed, unless in the covenant the grantor specifically agrees to stand liable for losses resulting from the assertion of such superior title. If not mentioned in the covenant, it will be presumed that the parties have made allowance for a known defect of title in fixing the purchase price, and the grantee, having only paid for what he gets, cannot afterwards be heard to complain that he has been damaged by a broken contract on the part of the grantor. This case is distinguishable, by its peculiar facts and circumstances, from all precedents to which my attention has been directed; but the above propositions are applicable here, and the same are, in a measure, supported by the following authorities: Co. Litt. (Butler & Hargrave's Notes; 1st Am. from 19th London Ed.) 384a; 2 Sugd. Vend. (8th Am. Ed.) 230; Montgomery v. Reed, 69 Me. 510–516; Holmes v. Danforth (Me.) 21 Atl. 845; Ake v. Mason, 101 Pa. St. 17; Kutz v. McCune, 22 Wis. 628; Barre v. Flemings (W. Va.) 1 S. E. 731. The words of the covenant seem to indicate an intention in the minds of the parties to restrict the covenant to correspond to the known situation of the premises, so that the liability of the vendor shall not be greater than would be reasonable for her to assume. The covenant is not to defend against all lawful claims, but against all persons lawfully claiming or to claim. Now, the commonwealth is not a person, and its claim of title is not mentioned specifically, nor is it within the general terms of the covenant, if the words are to be considered as having been selected to accurately express the intention of the parties. Rawle, Cov. (5th Ed., p. 171; McBride v. Board. 44 Fed. 17; In re Fox, 52 N. Y. 535; U. S. v. Fox, 94 U. S. 315–321. If the defendant, by her covenant, became broadly liable, as the plaintiff now insists, the contract was ill-advised and improvident on her part, because she at once parted with her possession, and became liable to return the purchase money with interest; and the liability was not contingent, but absolute. This should not free her from an obligation plainly expressed in her contract; but the unreasonableness of the contract, if construed as the plaintiff insists that it should be, may fairly be taken into account in drawing a conclusion as to the meaning of the words employed. There is no rule to justify a construction of the contract, whereby a sub-

stantial change is made in the meaning of words in common use, so as to create a liability for an amount greater than the defendant received as the price of the property.   Demurrer sustained.