## SCHAFROTH v. ROSS.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1923.)

No. 6162.

1. **Courts** ⬅365—State court's decisions on matter of local law followed in federal court.

State decisions on matters of local law are followed in federal court, where the question has been squarely decided by the highest state court.

2. **Vendor and purchaser** ⬅68—Contract giving notice of permanent easement presumed to except easement.

Where a contract of conveyance by a fair construction of the whole instrument gives notice of an easement permanent in its nature, such as the right of way of a railroad company, the purchaser takes title subject to such easement, and there can be in equity no right on his part to rescind the contract because of the same, for the parties in such case are presumed to have contracted with reference to the easement, in view of Comp. St. Neb. 1922, § 5594.

3. **Vendor and purchaser** ⬅68—Where purchaser knew, from language of contract and having been on the land, that there was railroad right of way over it, such right of way deemed excepted.

Where purchaser was put on notice, from the description in the contract and from having been on the land himself, that there was a railroad right of way over the land, such right of way was deemed to have been excepted from the land conveyed.

4. **Vendor and purchaser** ⬅114—Right to rescind for mistake held waived.

Where neither purchaser nor his assignor attempted promptly to rescind on discovering that by mistake the contract did not except a railroad right of way on the land, the right to rescind was waived.

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit by Sprague D. Ross against Henry Schafroth. Decree for plaintiff, and defendant appeals. Modified and affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. G. Abbott, of Grand Island, Neb. (A. C. Mayer and E. G. Kroger, both of Grand Island, Neb., on the brief), for appellant.

Fred W. Ashton, of Grand Island, Neb. (Edward F. Hannon, of Shelton, Neb., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and BOOTH, District Judges.

KENYON, Circuit Judge. This is an appeal from a decree of the United States District Court, Grand Island Division, District of Nebraska, rendered in favor of appellee, Ross, against appellant, Schafroth, and providing for the sale of certain land owned by Schafroth and wife to pay judgment entered on various notes secured by first and second mortgages on the land. No complaint is made of that part of the decree providing for sale under the mortgage foreclosure; the claimed error of the court being in permitting the enforcement by appellee of an equitable lien on the land to cover the amount paid by appellee's assignor on the purchase price thereof. The land was the southwest quarter of section 24, and all that part of the east one-half of section 24, lying south of the center of the right of way of the Union Pacific Railroad Company in township 11 north, of range 10 west of the 6th P. M., in Nebraska, containing 286 acres, more or less. Appellant, Schafroth, sold the same at public auction to one Blomquist, and entered into a contract with him which is the basis of this controversy. In the deed of the land to Schafroth from the West Grand Island Live Stock Company the same was made subject to the right of way of the Union Pacific Railroad Company. When Schafroth made the contract with Blomquist, no similar provision was inserted. The contract of sale did provide as follows:

"Witnesseth, that the party of the first part has this day sold to the party of the second part the following described property, to-wit: Southwest quarter (S. W. ¼) section twenty-four (24), and all of that part of east half (E. ½) of section twenty-four (24), lying south of the center of the right of way of the ·Union Pacific Railroad Company, all in township eleven (11) north, of range ten (10), west of the 6th P. M., in Hall county, Nebraska, containing two hundred eighty-six (286) acres, a little more or less, according to the government survey thereof, together with all appurtenances thereto belonging and now thereon, for which the party of the second part agrees to pay the sum of thirty-seven thousand thirty-seven ($37,037.00) dollars, $————, payable as follows."

December 15, 1920, Blomquist made an assignment of this contract to appellee, Ross. One of the provisions of this assignment is, "The intention being to assign all of our interest in said contract and the premises covered therein." This assignment was in blank, and Ross did not insert his name as assignee therein until March 2, 1921. March 1, 1921, Schafroth attempted to make a settlement, but was unable to do so, either with Ross or with Blomquist. The consideration given by Ross to Blomquist for said assignment was a lot in Central City which he valued at $1,200. Blomquist paid $5,555.55, and was to make further payment on the 1st day of March, 1921. Ross sought judgment for the notes and foreclosure of his mortgages, and as to this there is no contest. He also asked judgment for the $5,555.55 paid by

Blomquist, and interest thereon, and that the same be established as an equitable lien, which was done. This is the contested proposition.

Had the contract contained a provision that the land was sold subject to the right of way of the railroad company, there would have been no controversy whatever. It is evident that Schafroth did not intend to make a contract to give a warranty deed to the 286-acre tract clear of the right of way of the Union Pacific Railroad Company. He had acquired the land from West Grand Island Live Stock Company and in the deed to him was the provision that it was subject to the right of way. He had given two mortgages on this same land to appellee, Ross, which contained the provision, "containing 286 acres, more or less, subject, however, to the right of way of the Union Pacific Railroad." Blomquist claims in the testimony that he thought he was getting 286 acres clear of the right of way. We are not satisfied, however, that such was his expectation. While the contract does not contain the provision of the mortgages with reference to taking the land subject to the right of way, it does refer to that part of the east half of section 24 (which is a part of the tract sold) lying south of the center of the right of way of the Union Pacific Railroad Company. Blomquist had been over the land. He knew that the same right of way that passed over the east one-half of section 24 passed over the southwest quarter of the same section. He knew it was the permanent right of way of the main line of the Union Pacific Railroad Company, and in the contract he had notice that the boundary line of the east one-half of section 24 was the center of the right of way. Hence he had notice from the contract that at least as to the east one-half of section 24 there was a superior title to his.

As appellee made no effort to have the contract corrected to express what he contended was the real intention of the parties, the question of whether a court should have corrected it under the record is not before us. We pass the question of any right to rescind because of the $15,000 mortgage on the property held by Ross payable in 1923, for Ross admits in his testimony, and the same admission is in the answer, that he had agreed to accept payment therefor before the same was due, if Schafroth so desired. Further, by the terms of the contract the situation is provided for, if there is a mortgage on the property when the time arrives for performance. The real question in this case is as to the right of way. We shall confine our discussion to that.

It is the theory of appellee that appellant agreed in the contract to furnish a warranty deed to 286 acres of land and an abstract showing good title; that the right of way was an incumbrance, and hence appellant could not perform his contract, because he could not furnish title clear and free of such incumbrance. Therefore, as assignee of Blomquist's interest in the contract, he had a right to rescind the same and recover the money paid by Blomquist to Schafroth on the purchase price, and to enforce such payment by the establishment of an equitable lien therefor. While a somewhat different theory is argued, the real basis of this action is rescission of the contract.

That such an easement as a railroad right of way is an incumbrance

is the very general voice of authority. Dosch v. Andrus, 111 Minn. 287, 126 N. W. 1071; Wadhams v. Swan, 109 Ill. 46; Riley v. Wheat (S. D.) 187 N. W. 425; Tandy v. Waesch, 154 Cal. 108, 97 Pac. 69; Burk v. Hill, 48 Ind. 52, 17 Am. Rep. 731; Farrington v. Tourtelott (C. C.) 39 Fed. 738; Goodman v. Heilig et. al., 157 N. C. 6, 72 S. E. 866, 36 L. R. A. (N. S.) 1004; Beach v. Miller, 51 Ill. 206, 2 Am. Rep. 290; Adams v. Henderson, 168 U. S. 573, 18 Sup. Ct. 179, 42 L. Ed. 584; Butler v. Gale, 27 Vt. 742; Weiss v. Binnian, 178 Ill. 241, 52 N. E. 969; Jerald v. Elly, 51 Iowa, 321, 1 N. W. 639; Pierce v. Houghton, 122 Iowa, 477, 98 N. W. 306; Quick v. Taylor, 113 Ind. 540, 16 N. E. 588; Kellogg v. Malin, 50 Mo. 496, 11 Am. Rep. 426; Whiteside v. Magruder, 75 Mo. App. 364. It has been held by many authorities that, where the vendee has knowledge of the incumbrance, it does not prevent him from recovering damages on account thereof in an action at law for breach of covenant. 11 Cyc. 1066, 1067, 1068; Barlow v. McKinley, 24 Iowa, 69; Doyle v. Emerson, 145 Iowa, 358, 124 N. W. 176; Harwood v. Lee, 85 Iowa, 622, 52 N. W. 521; Huyck v. Andrews, 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432; Yancey v. Tatlock, 93 Iowa, 386, 61 N. W. 997; Weiss v. Binnian, 178 Ill. 241, 52 N. E. 969; Patterson v. Freihofer, 215 Pa. 47, 64 Atl. 326; Harlow v. Thomas, 15 Pick. (Mass.) 66; Townsend v. Weld, 8 Mass. 146; Rawle on Covenants for Title (5th Ed.) §§ 82 and 88. The decisions holding to this rule are based on the danger of permitting parol evidence to show knowledge of defect in title and thereby grafting exceptions upon written instruments.

Another line of decisions follows the doctrine that, where there is a sale of a tract of land upon which exists an obvious easement or burden of any kind, such as right of way, highway, river, artesian system, or pond, and the person has knowledge thereof, the fair presumption is, in the absence of express provisions in the contract, that both parties act with reference thereto, and that the purchaser is in fact paying only for the land subject to the easement thereon, and therefore the easement does not constitute such an incumbrance as to support an action for breach of covenant against incumbrances. Kutz v. McCune, 22 Wis. 628, 99 Am. Dec. 85; Pomeroy, Executor, v. C. & M. Ry. Co., 25 Wis. 641; Rich v. Scales, 116 Tenn. 57, 91 S. W. 50; Burbach v. Schweinler, 56 Wis. 386, 14 N. W. 449; Sachs v. Owings, 92 S. E. 997; Goodman v. Heilig, 157 N. C. 6, 72 S. E. 866, 36 L. R. A. (N. S.) 1004; Frost v. Angier, 127 Mass. 212; Knox v. Spratt, 23 Fla. 64, 6 South. 924; Ex parte Alexander, 122 N. C. 727, 30 S. E. 336; Patterson v. Arthurs, 9 Watts (Pa.) 152; Memmert v. McKeen, 112 Pa. 315, 4 Atl. 542; Bird v. Bank of Williamstown, 13 S. W. 430, 11 Ky. Law Rep. 868; Desvergers v. Willis, 56 Ga. 515, 21 Am. Rep. 289; Whitbeck v. Cook, 15 Johns. (N. Y.) 483, 8 Am. Dec. 272; Barnum v. Lockhart, 75 Or. 528, 146 Pac. 975; Hymes v. Estey, 116 N. Y. 505, 22 N. E. 1087, 15 Am. St. Rep. 421; Schurger v. Mooreman, 20 Idaho, 97, 117 Pac. 122, 36 L. R. A. (N. S.) 313, Ann. Cas. 1912D, 1114. This line of decisions is well illustrated by the case of Kutz v. McCune, 22 Wis. 628, 99 Am. Dec. 85. There the defendant conveyed land by deed, with covenants against incumbrances and without any

exceptions. Thirty to forty acres were overflowed by mill pond. The court said that the right of flowage might constitute an incumbrance, but that the case was governed by another principle, viz. that a purchaser of property, obviously and notoriously subjected at the time to an easement affecting its physical condition, takes it subject to such easement. Also in Pomeroy, Executor, v. Chicago & Milwaukee Railroad Co., 25 Wis. 641, 643, the court said:

"Where there is a sale of a tract of land upon which there is an obvious existing easement or burden of any kind, like an ordinary highway, a railroad, or mill pond, the fair presumption, in the absence of any express provision in the contract upon the subject, is that both parties act with direct reference to the apparent existing burden, and that the vendor demands, and the purchaser pays, only the value of the land subject to it."

In Sachs v. Owings, 121 Va. 162, 92 S. E. 997, it was held that, where in a tract of land a telephone line was visible at the time of purchase, the purchase was presumed to have been made and the price fixed with reference to it. In Frost v. Angier, 127 Mass. 212, the land was bounded by a road which was a public highway. Held, the road was not an incumbrance on the estate conveyed to him, and no cause of action by it arose. In Knox v. Spratt, 23 Fla. 64, 6 South. 924, it was held that the rule, where vendor is unable to comply with contract by reason of not having legal title to all the land, vendee is entitled to specific performance for such as he has title to, with compensation for residue, does not apply when vendee knew at the time of purchase that vendor does not have full title. The language of Judge Philips in Farrington et al. v. Tourtelott (C. C.) 39 Fed. 738, 739, 740, is interesting. He says:

"If the controlling question raised by this demurrer were res novo, the conclusion which my sense of right and justice would reach would probably conflict with what seems to be the current American authority. Accepting as true the allegations of the amended bill, the respondent [vendee] contracted for the property after personal inspection of the premises. He saw the railroad track through it, and bought the property because in his opinion this railroad switch enhanced the value of the purchase. To the common sense of mankind it would therefore seem to be a solecism, a contradiction in terms, to say that the purchaser could be heard to assert that that was an incumbrance, a burden, in diminution of the value of the thing bought, which was regarded by both parties as an inducement to the purchase. * * * Nothing is more natural or usual than that two parties, negotiating respecting the price of a piece of property in full view, with obvious physical conditions, calculate the price based on the advantages or disadvantages supposed to arise on such apparent facts."

As the case there was one arising in Missouri, the learned judge felt called upon to follow the case of Kellogg v. Malin, 50 Mo. 496, 11 Am .Rep. 426. No such situation arises here, as the question has not been settled by the Nebraska courts. We refer to some of the Nebraska decisions. In Arterburn v. Beard et al., 86 Neb. 733, 126 N. W. 379, it was held that one who purchases land burdened with an open and visible easement is ordinarily charged with notice that he is purchasing a servient estate, and he buys subject to the easement. Also Znamanacek v. Jelinek, 69 Neb. 110, 95 N. W. 28, 111 Am. St. Rep. 533; George v. Pracheil, 92 Neb. 81, 137 N. W. 880. The latter case, however, involved the purchase at a judicial sale, and the property

subject to the right of way was all that the referee could sell. In Clark v. Mossman, 58 Neb. 87, 78 N. W. 399, the court, referring with evident approval to the holdings that the purchaser of land must take notice of the existence of public highways, and that the existence of such easement is not a breach of covenant against incumbrances, said:

"The existence of a public highway cannot be ignored by a purchaser of the land with which the title of the strip must pass subject to the easement indicated. In purchasing the four-acre tract, plaintiff must be presumed to have taken notice of the public highway. Both parties, it is to be assumed, contracted with reference to its existence."

In Killen v. Funk, 83 Neb. 622, 120 N. W. 189, 131 Am. St. Rep. 658, it was held that a public highway was not a breach of an express covenant against incumbrances. It is held in Chicago, R. I. & P. v. Shepherd, 39 Neb. 523, 58 N. W. 189, that a grantee of land which is subject to a right of way or other easement takes it burdened with such incumbrance, and is not as a rule entitled to recover damages therefor.

[1] While these Nebraska cases are not strictly in point as to the question here, they tend strongly toward the doctrine sustained by numerous cases, some of which we have cited, viz. that where there is an easement on a tract of land, open, visible, and notorious and known to the purchaser, upon a sale it is a fair presumption that the sale was made with the understanding of both the vendor and the vendee that it was taken subject to such easement, and the price was fixed with reference thereto. This court would naturally follow the Nebraska decisions on a matter of local law, if the question had been squarely determined by the highest court of the state. Our conclusion, however, in this case, we are satisfied, does not run counter to the Nebraska decisions.

[2] We think it sound equity and common sense that, where a contract of conveyance by a fair construction of the whole instrument gives notice of an easement permanent in its nature, such as the right of way of a railroad company, the purchaser takes title subject to such easement, and there can be in equity no right on his part to rescind the contract because of the same. The parties in such case are presumed to have contracted with reference to the easement. This does not in any way violate the fundamental rule prohibiting the varying of written instruments by parol evidence. We are not called upon to decide the question as to the effect of knowledge of an easement arising outside the instrument itself, as that question is not here, and we do not determine it.

In Feurer v. Stewart (C. C.) 83 Fed. 793, 795, the court said:

"When an estate is conveyed by a deed, describing it so that the parties must understand therefrom that the estate is subservient to a superior title, which cannot be extinguished nor acquired, the grantee takes its cum onere, and no right of action can accrue in his favor upon the covenants in the deed, unless in the covenant the grantor specifically agrees to stand liable for losses resulting from the assertion of such superior title."

In Holmes v. Danforth, 83 Me. 139, 21 Atl. 845, the court said:

"The principle on which these and many other similar decisions rest is that, when the estate conveyed is so described that the parties must have

understood that it was subject to a servitude, the grantee takes it cum onere, and will not be allowed to complain of that servitude as a breach of the covenants in his deed. In all such cases the conclusion is irresistible that, if the incumbrance was a damage to the estate, that fact was taken into account in fixing the price, and that the grantee has obtained all that he bargained for and all that he paid for."

See, also, Prescott v. Williams, 5 Metc. (Mass.) 429, 39 Am. Dec. 688; Memmert v. McKeen, 112 Pa. 315, 4 Atl. 542; Burbach v. Schweinler, 56 Wis. 386, 14 N. W. 449; Frost v. Angier, 127 Mass. 212; Freeman v. Foster, 55 Me. 508.

The rule is stated in Moore, Appellee, v. Lutjeharms, et al., 91 Neb. 548, 136 N. W. 343, quoting with approval 36 Cyc. 742, as follows:

"If the purchaser at the time of entering into the contract was aware of the defect in vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price."

In Cincinnati v. Brachman, 35 Ohio St. 289 (syllabus) it is said:

"Where a deed of conveyance describes the lands intended to be conveyed as extending to the center of a street 'as to be extended,' and refers to a plat on which the street is traced, the grant is subject to the street, and the subsequent use of such street as a public highway does not constitute a breach of covenants against incumbrances or of general warranty."

See Patten v. Fitz, 138 Mass. 456; Frost v. Angier, 127 Mass. 212; Burbach v. Schweinler, 56 Wis. 386, 14 N. W. 449; Bridger v. Pierson, 45 N. Y. 601.

While it is our duty to construe the contract to carry out as nearly as possible, without violating established rules of law or equity, the intent of the parties, we are especially so admonished by the Nebraska statute. Section 5594, Rev. Statutes of Nebraska 1922, provides:

"In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected, from the whole instrument, and so far as such intent is consistent with the rules of law."

[3] Taking the contract, therefore, as a whole, what could be fairly inferred as the intention of the parties? Was it that Blomquist intended to take the tract subject to the right of way, or was he to have 286 acres clear and free of the right of way? While oral evidence cannot be introduced to vary a written contract, all the facts and circumstances surrounding the transaction may be considered in order to determine the real intention of the parties. Here Blomquist had notice in the contract that that part of the tract to which he was acquiring title on the east one-half of section 24 was bounded by the center of the right of way of the Union Pacific Railroad. This was certainly sufficient to apprise him that the east one-half of section 24 was subject to the right of way. It passed across the east one-half of section 24, and also across the southwest quarter of section 24. It was permanent in its nature—a continuous stretch of territory. Within all human probability it would not be abandoned. Blomquist knew that Schafroth could not remove the railroad and give him clear title,

free from the incumbrance, by March 1, 1921. While the description refers to 286 acres, nevertheless the land is described as a tract, and was so dealt with by the parties.

There was sufficient in the contract, we think, to put him on notice that he was acquiring the tract of land subject to the right of way of the Union Pacific Railroad Company. It is in the evidence that he had been on the land; knew that this was the right of way of the main line of the Union Pacific Railroad Company; knew it could not pass over the east one-half of section 24 without continuing over the southwest quarter of section 24. Further, his every action subsequent to the making of the contract indicated that he so understood it. He never raised any question as to the right of way being a breach of what Schafroth had agreed to do, nor did he object thereto or demand a deed with covenants against the right of way easement. He never attempted to rescind the contract, nor tendered back possession, and finally disposed of his interest for whatever he could get for it. Certainly if he had understood that the arrangement was and that the intention of Schafroth was to give him a warranty deed to a tract of 286 acres clear and free of the right of way, he would have raised some question about it before March 1, 1921, when the deal was to be completed. Apparently the shrinkage in land values was such that Blomquist was glad to step out and abandon the whole thing. We are convinced that under the situation disclosed by this record Blomquist would have had no right to rescind the contract and recover in equity the amount paid on the purchase price.

[4] Even were there a right here to rescind, we are satisfied that as to Ross there was a waiver. It would seem that, if Blomquist did not know at the time of making the contract that the right of way was an incumbrance and thought he was securing 286 acres besides the right of way, when he did discover that this was not the fact, he would, within a reasonable time, notify Schafroth, tender back possession of the land, rescind the contract, and attempt to recover the amount paid on the purchase price. Black on Rescission of Contracts, § 938. Or he could waive rescission, and wait until the 1st of March, and at law sue for damages. Neither Blomquist nor Ross, his assignee, made any attempt to rescind, or to give up possession, but held onto the land, at least until March 1st; Ross attempting to speculate therewith.

In Schlake v. Healey, 187 N. W. 427, 429, the Nebraska court said:

"Appellant received the abstracts about the 20th day of February, and was charged with knowledge of the condition of the record title disclosed by them; yet thereafter, and on March 1, he took possession of the land, placed a tenant thereon, and has continued to hold such possession. While so in possession, appellant was in no position to rescind his contract. To entitle him to do so, it was necessary that he should promptly restore possession to Healey." Alfree Mfg. Co. v. Grape, 59 Neb. 777, 82 N. W. 11; Stewart v. Tate, 103 Neb. 28, 170 N. W. 355.

In Gallagher v. O'Neill, 78 Neb. 671, 111 N. W. 582, the court announces the Nebraska doctrine holding as to fraud that the right of rescission must be promptly exercised on discovery of the fraud, quoting with approval Grymes v. Sanders et al., 93 U. S. 55, 23 L. Ed. 798;

McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29, 35 L. Ed. 804. Same doctrine, Am. B. & L. Association v. Rainbolt, 48 Neb. 434, 67 N. W. 493; Richardson v. Lowe, 149 Fed. 625, 631, 79 C. C. A. 317; Black on Rescission, vol. 2, § 607. It would seem there would be no difference in the doctrine, where there is a mistake and it becomes known to the vendee.

The situation is stronger against the right of Ross to maintain an action in equity to enforce a vendee's lien than it would be as to Blomquist. Ross having an assignment of Blomquist's interest, claims that, while he had all the rights he had none of the liabilities, of the contract. He is in equity seeking to avoid equity, and while specific performance should not be decreed against him, in view of Schafroth's failure to tender deed, he should not be permitted, under the circumstances of this case, to enforce any claim of an equitable lien for the part of the purchase price paid by Blomquist. The ancient maxim that he who seeks equity must do equity might well be applied to him. His interest in the matter seems to be entirely a speculative one.

What are the facts as to Ross? There was no mistake on his part. He knew that Schafroth did not have 286 acres outside of the railroad right of way. He had abstracts in his possession showing that fact, was a member of the West Grand Island Live Stock Company, owning 50 per cent. of the stock, and knew that Schafroth bought the land from his company subject to the right of way. He stood by when the sale took place to Blomquist and said nothing. Some of the money received by Schafroth from Blomquist in the sale was paid to him on his mortgages. He left the assignment blank as to name, and tried to speculate with it. He did not write in his name as assignee until after March 1st, the time for payment under the contract. His assignment made it impossible for Schafroth to make settlement with Blomquist, and he admits it in testimony. He did not intend to make any settlement March 1st, nor would he have paid the amount due on the 1st of March under the contract. He dealt with Carter as a tenant, and exercised acts of ownership over the land, without asserting any intention to rescind, or making complaint as to the amount of land; wrote to Schafroth December 17th and 29th, when he had the assignment, and never mentioned it. Schafroth did not know that Ross held assignment until his attorney notified him February 25th, and offered to take $2,368.83 for release of contract. When Schafroth tried to settle, he would not do so. He took possession of the land, knowing all the facts, traded a lot in Central City of small value for Blomquist's interest in the contract, and tries now to receive for this over $6,000.

Under these circumstances it would seem an unconscionable thing for appellee, Ross, to succeed in his speculation and recover the amount paid by Blomquist. His whole course of conduct does not impress us as actuated by any desire to deal equitably with Schafroth. If these acts of commission and omission are not sufficient to establish an equitable estoppel, they certainly show a waiver of any right on his part to rescind the contract. We think justice will be done in this case, and no principles of equity violated, if the decree of the court is modified by eliminating therefrom the following provision:

"That the defendants Henry Schafroth and Ida E. Schafroth pay or cause to be paid to the plaintiff herein the sum of six thousand two hundred twenty-three and $^{65}/_{100}$ ($6,223.65) dollars, with interest at the rate of 7 per cent. from the 17th day of March, 1922, and that said sum, with interest, be decree to be a third lien upon the premises described in plaintiff's petition."

and reducing the judgment by said amount of $6,223.65. It is so ordered, and, thus modified, the judgment and decree of the trial court is affirmed.

Costs on appeal to be taxed against appellee.