## TANSEL v. STORM.

No. 4556.    Opinion Filed October 14, 1913.

Rehearing Denied February 3, 1914.

(138 Pac. 168.)

**PUBLIC LANDS — School Lands — Lease — Sale of Timber — Validity.** Where, pursuant to Const. art. 6, sec. 32, and Act of May 29, 1910 (Laws 1910, c. 118), the Commissioners of the Land Office leased certain school lands of the state to plaintiff for five years without excepting from the operation of its terms the timber growing thereon, and during the life of the lease sold the said timber to another, **held,** that said sale passed no title to the purchaser as against the lessee. **Held** further, in an action to restrain the purchaser from cutting the same, that a demurrer to the answer setting forth the fact of his purchase and asserting a right thereunder to cut and carry away was properly sustained.

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*
*L. M. Poe, Judge.*

Action by T. W. Storm against Ray Tansel. Judgment for plaintiff, and defendant brings error. Affirmed.

*James H. Chambers,* for plaintiff in error.

*Goodwin & Dillard,* for defendant in error.

*John R. Williams, amicus curiae.*

TURNER, J. From a judgment in the district court of Pawnee county rendered and entered September 11, 1912, sustaining a demurrer to his answer and making perpetual a temporary injunction theretofore obtained against him pursuant to the prayer of the plaintiff's petition, defendant brings the case here. Plaintiff's petition substantially states that he is a resident of that county and lives on a certain tract of land; that the same is a part of the public school land of the state, and that plaintiff is in possession under an agricultural lease executed and delivered to him by the Commissioners of the Land Office on January 1, 1912, which terminates January 1, 1914; that by reason of said lease he has a preference right to purchase said land when the same shall be sold and also a perfect right to its enjoyment in the condition that the same was at the time of the execution of the lease; that said land is partially covered by growing timber, to remove which would greatly impair the use of the land and the value of his leasehold, and that one of the chief benefits to be derived from said land is the use of said timber for shade, etc.; that plaintiff has a vested right in and to said land and all the timber standing thereupon during the life of said lease, and that any removal thereof would greatly reduce the value and destroy the usefulness of said land; that he has located thereupon lasting and valuable improvements and placed a portion of the land in cultivation and has made the same his home on the belief that he will ultimately have his preference right of purchase; that defendant has gone upon the land and by force of arms has taken possession of the same for purpose of removing therefrom the timber growing thereon; that defendant is insolvent; that plaintiff has no adequate remedy at law; and that the acts threatened will constitute an irreparable injury. His lease is made an exhibit to the petition, and the prayer of the petition is that defendant be enjoined, etc., which was done by a temporary restraining order issued by the judge of

the county court. Thereafter came defendant and denied that by reason of the lease plaintiff had a vested right in said land and timber standing thereon during the life thereof, and that its removal would greatly reduce the value and destroy the usefulness of said land, and that the price paid for the rental included the use of the timber growing thereon and that the removal of the timber would destroy plaintiff's preference right of purchase. Further answering, defendant states that the Commissioners of the Land Office have control and management of the leasing and sale of the state school lands; that pursuant to such authority conferred on them by law they advertised the walnut timber upon the land in controversy for public sale on June 27, 1912; that on that day defendant duly filed his bid therefor, and upon the opening thereof he was declared to be the highest bidder therefor, and the same was awarded to him by said commissioners for a certain sum which he thereupon paid in cash, which said bid was approved by the commissioners, who issued to him a certificate of purchase for said timber and the right to enter upon said land for the purpose of cutting it and taking it away, and which said certificate he filed as a exhibit to his answer; that before the sale plaintiff was notified by the commissioners of his preference right to take said timber at the highest and best bid made, which he declined to do, although present at the sale; that after the sale, pursuant to the rules and regulations adopted by the board, he entered into a contract with said commissioners agreeing to pay all damages plaintiff might sustain to his growing crop in cutting and hauling away said timber; that upon attempting to enter so to do he was forbidden by plaintiff, whereupon his action was reported to said commissioners, who notified plaintiff that defendant had purchased said timber and had received their permission to enter, and also that in event of further refusal to permit him so to do the Governor, as chairman of said board, was authorized to place a certified copy of said order in the hands of the sheriff of Pawnee county with instructions to enforce the same by placing defendant in possession of that portion of the land upon which the timber grows, with right of ingress and egress; that later

the sheriff executed said process, by virtue of which defendant is now in possession.

Both sides agree that whether the court erred in sustaining a demurrer to this answer turns upon the right of the commissioners to sell the timber during the life of the lease. Whether they had this right depends on whether the timber growing on the demised premises at the time it was let was excepted from the operation of the terms of the lease. If it was not excepted, then the use of it passed to plaintiff for the life of the lease along with the land, and the commissioners were without right to sell it and deprive the plaintiff thereof during his tenancy under the lease. This sends us to the lease. Constitution, art. 6, sec. 32, provides:

"The Governor, Secretary of State, State Auditor, Superintendent of Public Instruction and the President of the Board of Agriculture, shall constitute the Commissioners of the Land Office, who shall have charge of the sale, rental, disposal, and managing of the school lands and other public lands of the state, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature."

Act approved March 29, 1910 (Laws 1910, c. 118), entitled an act providing for the manner and procedure of leasing and managing the public land of the state, reads:

"Sec. 1. All the public lands of this state shall be subject to lease in the manner provided herein. The Commissioners of the Land Office shall have charge of the leasing of such land."

Pursuant thereto this lease was made. The record sets it forth and discloses that thereby the commissioners leased to plaintiff a part of the school lands from January 1, 1910, to December 31, 1914. It goes without saying that this lease carried the growing timber for the term as well as the land, the timber being part of the leasehold. By carried we mean, of course, unless excepted from the operation of the terms of the lease. But nowhere in the lease is contained an exception or reservation of any kind. Much less does it expressly or by implication contain a clause excepting from its operation the growing timber upon the land. The only thing resembling a reservation is a clause reserving to the state the right to sell and convey the

land therein described at any time, " * * * and that upon such sale, if any be provided by.law prior to the expiration of this lease, the same shall thereupon expire, and the party of the second part as the lessee of said land shall be entitled to purchase the same at the highest bid, subject to such conditions, limitations, restrictions, and exception as may be provided by law." It is not contended that this right to sell the land at any time carries with it the right to sell the timber at any time, and yet such right is contended for with much less to base it upon. We repeat that it is only when the growing timber itself is excepted by the terms of the lease that the same remains the property of the grantor free from the operation of its terms.

*Jenny et al. v. Brook,* 6 A. & E. (N. S.) 322, was trespass for breaking and entering plaintiff's close and destroying his trees, bushes, shrubs, etc. The facts were that plaintiff had demised the land by indenture "excepting all timber, timber trees and other trees," etc. The plea was not guilty. It was insisted that plaintiff could not maintain the action because the thorns and bushes cut by defendant were not excepted in the demise and therefore belonged to the tenant; but the court held not so, after construing the terms of the lease, and that if they were cut by defendant the plaintiff was entitled to a verdict, and further that a charge that if they were cut by defendant a verdict for plaintiff was right.

*Wincham v. Way,* 4 Taunt. 316, was trespass for cutting, topping, and lopping certain apple trees of plaintiff standing on certain land called the Leonard Farm. The facts were that plaintiff had by lease demised to another the farm, and defendant had by marriage become entitled to the remainder of the term. The plea was not guilty, and the facts were the defendant had "headed" apple trees growing on the place. The question was whether, by an exception contained in the lease "of all trees, timber and wood ground of whatsoever kind," apple trees were excepted from the operation of the lease. Plaintiff contended that he could support trespass, being in possession of these trees under the exception in the lease; but the court held not so, and that apple trees, the defendant being a nurseryman, were not

within the exception, and hence he had the right to cut, sell, or remove them. See, also, *Kutz v. McCune,* 22 Wis. 628, 99 Am. Dec. 85.

We are therefore of opinion that the lease in question con- tains no exception of the growing timber, and hence the state had no right to sell it during the life of the lease. And, of course, that such sale conferred no title on the purchaser except perhaps of the state's reversionary interest, but of that we will not speak.

But it is contended that at the time of the execution of this lease there existed a rule of the board which had the force and effect of law and of which the plaintiff had notice at the time of the execution and delivery of the lease and which is as much a part thereof as if written therein, and which reads:

"Rule 12. No person shall be permitted to cut any timber on said land or quarry any stone or mineral therefrom, except by special permission granted by the board, except that stone may be used as foundation for buildings on the land."

This rule is certainly a part of the lease, for pursuant there- to the lease provides:

"The said party of the second part hereby agrees, binds and obligates himself that he will not cut or remove, or permit to be cut or removed, any timber from said land; that he will not quarry or remove or permit to be quarried or removed any building or valuable stone from said land, that he will not mine or move, or permit to be mined or moved any minerals there- from, and that he will not remove or take from said land any sand or gravel or other deposits of like character without first obtaining written authority so to do as by the law of said state provided."

But it does not follow that such had the effect of excepting the growing timber on the land from the operation of its terms. This is apparent when we consider "that the legal effect of an exception is to sever, from that which is granted, that which is excepted so that the latter does not pass with the grant" (*Ed- wards v. Bruslia,* 18 Okla. 234, 90 Pac. 727; Shep. Touch. 77), and that a lease should always be construed most favorably to the tenant (*Broadway, etc., v. Metzer* [Com. Pl.] 15 N. Y. Supp. 662; 18 Am. & Eng. Enc. Law, p. 617).

Construing rule 12, together with the lease most favorably to plaintiff, it means that the commissioners are required, in cases of this kind, to write into the lease just what they have written in this one, *i. e.*, to obligate the lessee not to cut or remove any timber from the demised premises, or permit it to be done "except upon special permission granted by the board." The rule does not require that an exception of any kind be made in the lease, but only that the commissioners secure from the lessee a covenant therein against waste.

As the demurrer was properly sustained, the judgment of the trial court is affirmed.

HAYES, C. J., and LOOFBOURROW, J., concur. KANE and WILLIAMS, JJ., absent, and not participating.